## STATE OF MINNESOTA v. WILLIAM SHEPPARD.[1]

April 29, 1896.

Nos. 9896—(66).

**City Ordinance—Validity under Varying Circumstances.**

A city ordinance, which in its scope may be adjudged reasonable and valid as applied to one state of facts and circumstances, may be adjudged unreasonable and invalid when applied to facts and circumstances of a different character.

**Same—Rapid Driving—Salvage Corps.**

Under authority granted by the charter to pass an ordinance to prevent and punish immoderate driving upon the public streets of the city of Minneapolis, the council enacted an ordinance which prohibited driving upon the streets at a greater rate of speed than six miles an hour; no exceptions being made. *Held*, as to members of a salvage corps, organized under the provisions of Laws 1895, c. 178, § 1, and for the purposes therein prescribed, responding to an alarm of fire sent to their station from the headquarters of the city fire department, said prohibition was unreasonable and invalid.

Appeal by defendant from a judgment of the municipal court of Minneapolis, Holt, J., adjudging him guilty of driving at a rate of speed exceeding six miles an hour contrary to the provisions of the city ordinance. Reversed.

*Cobb & Wheelwright* and *M. B. Koon*, for appellant.

*David F. Simpson*, City Attorney, *M. D. Purdy*, Asst. City Attorney, *Matthew Gallagher*, and *Freeman P. Lane*, for respondent.

COLLINS, J. By the terms of the charter of the city of Minneapolis[2] the common council has been given full power and authority "to prevent and punish immoderate driving or riding" on the public streets, by ordinance. Acting upon this authority, presumably, an ordinance was passed prohibiting the driving of animals in the streets at a rate of speed exceeding six miles an hour, and defendant was convicted of a violation of this ordinance.

It stands admitted that he drove on the streets at a rate of speed exceeding that specified in the ordinance. It also stands admitted that at the time he was in the employ of a corporation

[1] Reported in 67 N. W. 62.    [2] Sp. Laws 1881, c. 76, subc. 4, § 5, subd. 7.

known as the Minneapolis Board of Fire Underwriters, organized under the provisions of G. S. 1894, c. 34, tit. 2, and having all of the powers and privileges conferred by Laws 1895, c. 178, § 1, as a member of its salvage corps and fire patrol, and was driving a pair of horses attached to a wagon containing a part of its equipment, in response to a fire alarm communicated to the corps' station by wire from the headquarters of the city fire department. It also stood admitted that, in order to act in the manner provided by the terms of section 1, supra,—with promptness and efficiency,—this wagon should be driven to the scene of the fire as rapidly as the department apparatus, the object and purpose of the salvage corps and fire patrol being to protect and save life and property. This appears from the provisions of the 1895 statute.

When at the fire, the men of the corps are subject to the complete control of the chief of the city fire department; and, if their duties are speedily and intelligently performed, the organization must be of great public service. In the rendition of these services it is auxiliary to the fire department, and designed so to be by the legislature. Although its members are not agents or servants of the municipality, they are empowered to perform public duties. To them the state has delegated the power to take steps to make early discovery of the existence of fires, and the duty of saving life and property when threatened by the flames, with full authority to properly and adequately perform these duties. If the organization to which defendant belonged had been equipped and maintained by the municipality, who would undertake to point out wherein the general authority and power of its members differed when engaged in the performance of their duty from that possessed by men serving in the fire department proper?

In conferring such authority and power upon the members of these salvage corps and fire patrols, the legislature, it must be inferred, intended that they should have such rights and privileges as would be necessary for the efficient discharge of their functions, including the use of the public streets within reasonable bounds. It was not contemplated that the corporations mentioned in chapter 178, after being empowered to organize salvage corps and fire patrols for the express purpose of discovering and preventing fires, to save and preserve life and property at and after fires, and, that

this might be done, to act with promptness and efficiency under the superintendence of the chief of the fire department, should have their men restricted by unreasonable local regulations, and deprived of the right to adopt and use means absolutely necessary for the proper exercise of their powers and the satisfactory discharge of their duties. It was not intended that the men should be authorized to proceed to the scene of a conflagration for the specified purpose of rendering seasonable and efficient service, as an adjunct to the fire department, beneficial to the public, and at the same time be amenable to a local regulation, which, as to the organization itself, might be unnecessary, unreasonable, and wholly destructive of its objects. For from the evidence of the chief of the fire department and others it appears that if the salvage corps is compelled to obey the provision of the ordinance as to the rate of speed at which its horses are driven, and under all circumstances, and without regard to the condition of the streets, must proceed at a rate of speed not exceeding six miles an hour, it cannot be on hand when most needed, and might as well disband.

The authority conferred upon the council by the charter was to prevent and punish immoderate driving in the public streets by proper ordinance. This authority has been exercised by the passage of the ordinance in question, which fixes the maximum rate of speed, and, in effect, declares that driving upon the streets at a rate exceeding six miles an hour is immoderate driving. Upon its face, and as respects the ordinary traveler or driver upon the public ways, this provision is reasonable and enforceable. But if it is to be applied and enforced with strictness and literally, without any exceptions of any kind, it is unreasonable, and cannot be upheld. To sustain it as within the authority given by charter, there must be some implied exceptions. Take, for illustration, the city fire department. Under its rules the fire apparatus must be driven to the scene with all possible dispatch consistent with safety. Careful and capable drivers of fire trucks and steamers make frequent and rapid runs through crowded streets with such rare skill that an accident is almost unheard of. Can they be accused of immoderate driving,—that is, excessive, extravagant, unreasonable driving,—under the circumstances, if they disregard the six-mile-an-hour provision, and proceed more rapidly,

64 M.—19

but, in fact, not immoderately, not failing to observe ordinary care, and not in a manner calculated to endanger the safety of persons and property on the street? We think not. Counsel for the prosecution have cited Morse. v. Sweenie, 15 Ill. App. 486, in support of their contention that even the members of the fire department are subject to prosecution if they violate this ordinance. An examination of that case will show its inapplicability, for it was there contended, and the trial court charged, that the defendant fire marshal had the right of way when he was responding to a fire alarm, and, in substance, had the power to run people down with his own team if the exigencies of the situation demanded. It is hardly necessary to state that the appellate court did not indorse this view of the law.

It has always been held that an ordinance which in its scope may be adjudged reasonable and valid as applied to one state of facts and circumstances may be adjudged unreasonable and invalid when applied to facts and circumstances of a different character, and we have heretofore said that upon its face, and as applied to the ordinary driver or traveler on the street, this particular ordinance, fixing a maximum rate of speed, is reasonable. The question, then, is, is it reasonable when applied to the facts and circumstances presented in this case? We are of the opinion that it is not, and that the members of the salvage corps are not subject to its provisions when responding to a fire alarm. All of the reasons which apply to the members of the city fire department are in point when we consider the case of the members of the salvage corps. They are engaged in the performance of a public duty of the same general nature, the power and authority to perform the duty being expressly conferred by statute. To properly and efficiently render the required service, the members of the corps must be expeditious in their movements, and must respond to an alarm about as quickly as the men belonging to the fire department proper. That the men belonging to these organizations cannot render the public service authorized and required by the statute, and in so doing observe the ordinance, was made plain by the evidence. Hence, in view of the power delegated and the duty imposed by the legislature, that provision of the municipal by-law, based upon a charter which simply empowers the council to prevent and pun-

ish immoderate driving, arbitrarily fixing the rate of speed to be attained in the streets at not exceeding six miles an hour, must be held, as to such organizations, to be unreasonable and invalid.

We do not consider the case of People v. Little, 86 Mich. 125, 48 N. W. 693, as opposed to these views. The defendant there was the driver of an ambulance belonging to a private hospital, we judge. He drove at the rate of 12 miles an hour, and, colliding with another vehicle, injured the driver thereof. Upon being arrested for violating an ordinance similar to the one at bar, his defense was that the provision restricting the rate of speed to six miles an hour did not apply to ambulances, principally because by a subsequent ordinance all ambulances and other vehicles used for the transportation of sick or wounded persons and animals had been given the right of way over all other vehicles. No special rights, privileges, or authority had been conferred upon ambulance drivers by statute; nor had they been recognized by law as engaged in a public duty or service; nor was it shown that at the time of the collision the ambulance was being driven in response to a call, or that it was conveying a patient whose case was emergent. The court simply held that ambulances were within the terms of the ordinance, and no reason existed why they should not be included within its scope; and, further, that the ordinance had not been modified by the later one giving to ambulances the right of way over other vehicles.

At the argument of this cause it was urged as a reason why the ordinance now being considered should be held to include salvage corps, that there was no limit or restriction upon the number of such bodies to be organized under the 1895 act, and that scores of these organizations might appear upon the streets in response to alarms. With the authority to control the members in the hands of the chiefs of fire departments, we do not anticipate such a condition, or that the statute will be abused. If it should be, an adequate remedy could be found and applied. Nor does it follow that because a reasonable and useful number of these bodies are to be excepted from the operation of the ordinance, an unreasonable and useless number would also be.

The judgment is reversed, and upon remittitur of the case to the court below the defendant will be discharged.