[Crim. No. 143.   Second Appellate District.—January 27, 1910.]

## Ex Parte J. H. SNOWDEN, on Habeas Corpus.

HABEAS CORPUS—VIOLATION OF VALID MUNICIPAL ORDINANCE—SPEED REGULATION OF VEHICLES—EXCESSIVE SPEED BY MOTOR VEHICLE.— One who has been arrested for violation of a valid municipal ordinance regulating the speed of all vehicles within the city limits, by driving a motor vehicle through its street in excess of thirty miles an hour, cannot be discharged from custody upon writ of *habeas corpus.*

ID.—ORDINANCE NOT VIOLATING "STATE MOTOR VEHICLE ACT"—REGULATION OF ALL VEHICLES—PERMISSION OF ALL ACTS MADE LAWFUL.—The ordinance is not in violation of the state "motor vehicle act" of March 22, 1905; but it complies with its requirement that its penalties for violation of speed laws by motor vehicles shall be similar to and not greater than those fixed for other vehicles, by making the ordinance applicable to all vehicles. Neither does it prescribe any lower rate of speed for motor vehicles than is fixed by that act, nor regulate their use in the streets of the city in any manner contrary to or inconsistent with its terms, nor attempt to exclude or prohibit any licensed owner or operator of a motor vehicle from making any use of the highway permitted by that act.

ID.—ORDINANCE PUNISHING GREATER EXCESS OF SPEED LIMITS.—Where the state motor vehicle act forbids motor vehicles from going at a greater rate of speed than ten miles per hour in cities and towns where the contiguous territory is built up, and fifteen miles per hour elsewhere therein, a municipal ordinance punishing a greater speed for all vehicles than twelve miles per hour in such first district, and twenty miles per hour elsewhere in the city, and providing a greater penalty for any speed in excess of thirty miles per hour, is not inconsistent with the state "motor vehicle act," nor contrary to the declaration of policy of the state in punishing speeding of motor vehicles upon public highways.

ID.—POLICE POWER OF STATE AND MUNICIPALITY.—The mere fact that the state, in the exercise of its police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and so long as the requirements of the municipal ordinance are not unreasonable or discriminatory, both will stand. The power of the city to pass the ordinance in question was conferred by its freeholders' charter, and the amendments thereto adopted prior to its passage.

ID.—TITLE OF ORDINANCE NOT PART THEREOF—AMENDATORY ORDINANCE.—The title of an ordinance is no part of the same. A title

to an ordinance is not required by law; and where it is a complete enactment in itself, the fact that it purports to amend a prior ordinance does not affect the matter.

Id.—Municipal Ordinance not Unreasonable or Discriminatory.— The municipal ordinance does not interfere with the reasonable exercise of the right of passage over public highways, nor does it discriminate against one class that they along with others should be required to conform to regulations affecting all vehicles.

Id.—Province of Municipality—Regulation of Speed of Travel in Streets.—It is the universally acknowledged right and province of each municipality to regulate the rates of speed of travel upon its own streets in the use of private vehicles discriminating against no private owner of any kind of vehicle.

Id.—Exception—Vehicles Operated by Police and Fire Departments.—The ordinance was not rendered invalid or discriminatory by excepting from the speed limits vehicles operated for public use by the fire and police departments of the city.

Id.—Punishment for Greatest Excess of Speed.—The provision in the ordinance for greatest punishment for a speed limit of vehicles exceeding thirty miles an hour is not discriminatory, because motor vehicles may exceed that limit more easily than other vehicles. It cannot be assumed that an ordinance applicable by its terms to all vehicles was intended to affect only one.

Id.—Purpose of Ordinance Protection of Life, Limb, and Property. The purpose of the ordinance would be accomplished, the protection of human life and limb, and property, by deterring every vehicle whatever its kind from passing through the streets at an excessive rate of speed.

Id.—Basis of Reasonableness of Regulation.—The reasonableness of the regulation for speed in excess of thirty miles an hour depends upon the purpose and the condition requiring it to be made. It is intended to prohibit not to punish. The offense created by its violation is *malum prohibitum* and not *malum in se,* and the penalty must rest largely in the sound discretion of the legislative branch of the government.

Id.—Reasonableness of Penalty for Greatest Excess of Speed.— It having appeared that the smaller excesses of speed usually escaped with a fine, it was reasonable to provide that when the speed exceeded thirty miles an hour the penalty of imprisonment must be imposed. Where the state legislature has declared that fifteen miles is a proper maximum of speed in a city, and the city has extended it to twenty miles an hour, it is reasonable to hold that one who drives his machine through the street at a rate exceeding thirty miles an hour is guilty of wantonly defying all law and restraint, and should be imprisoned therefor.

ID.—HARMONY OF PENALTY WITH OTHER PENAL LAWS.—Where other penal laws make the endangering of human life in sport or speed a felony, the imperiling or endangering of the lives of citizens upon the streets of a city by vehicles exceeding the speed of thirty miles per hour may be made punishable with imprisonment in the city jail for from ten to fifty days, without subjecting the ordinance imposing such penalty to the criticism that it is out of harmony with the other penal laws of the state because imposing an excessive punishment. .

PETITION for discharge from custody upon writ of *habeas corpus* to the chief of police of the City of Los Angeles.

The facts are stated in the opinion of the court.

Frank James, for Petitioner.

Guy Eddie, Prosecuting Attorney, and W. W. Dodge, Deputy Prosecuting Attorney, for Respondent.

THE COURT.—*Habeas corpus.* Petitioner is in the custody of the chief of police of the city of Los Angeles charged with violating section 26 of ordinance No. 15,775 of that city, known as the "traffic ordinance," as the same was amended by ordinance No. 18,435, by driving an automobile upon and along one of the streets of Los Angeles at a rate of speed greater than thirty (30) miles per hour.

In support of his contention that he is illegally detained, the petitioner urges that the ordinance is void for the following reasons: (1) It is in conflict with the state "motor vehicle act," as amended March 23, 1907, because it attempts to enact regulations at variance with the provisions of that act, and prescribes a different penalty for an act made a crime and punishable under a general law; (2) That the ordinance discriminates against owners and drivers of motor vehicles; and (3) That the ordinance is unreasonable and the punishment imposed thereby excessive and out of harmony with the laws of the state prescribing penalties for misdemeanors.

The motor vehicle act as approved March 22, 1905, and amended in 1907 (Stats. 1907, p. 915), provides for the registration of motor vehicles and the issuance of license certificates to their owners and operators, and the regulation of the rates of speed at which such vehicles may be operated upon the pub-

lic highways of the state, etc. For streets and highways within the boundaries of incorporated cities and towns it provides a maximum rate of speed of one mile in six minutes, where the contiguous territory is "closely built up," and one mile in four minutes elsewhere in such cities and towns. Graduated penalties for first and subsequent violations of the law are prescribed in the form of fines or imprisonment, or both. The act also limits the power of the local authorities to pass, enforce or maintain any ordinance, rule or regulation with reference to motor vehicles, except in accordance with certain express conditions stated in the act, and declares all ordinances, rules and regulations in force at the time of the passage of the act which do not conform to such limitations to be of no validity or effect.

The ordinance complies with the requirement of the act that the penalties for violation of the speed laws by motor vehicles shall be similar to and no greater than those fixed for other vehicles by making the provisions of the ordinance in this respect applicable generally to all vehicles. Tested by the other limitations of the act, the ordinance does not attempt to exclude or prohibit any licensed owner or operator of a motor vehicle from making any use of the highway permitted by the act itself; it contains no provision affecting the registration or numbering of motor vehicles; prescribes no slower rate of speed for them, and does not regulate their use of the streets of the city in any manner contrary to or inconsistent with the provisions of the act. It divides the city into two districts and fixes a maximum rate of speed for one of them at twelve miles per hour, and for the other at twenty miles per hour, and provides penalties of fines or imprisonment, or both, graduated in severity for first and subsequent offenses, for all violations of its speed regulations where the speed attained does not exceed thirty miles per hour. In cases in which the rate of speed is in excess of thirty miles per hour, section 26 declares the violation to be a misdemeanor and punishable in all cases by imprisonment in the city jail; the terms being: For the first offense, from ten to fifty days; for the second and subsequent offenses, thirty days to six months.

Conceding, but not deciding, that the motor vehicle act is operative in the city of Los Angeles, it prohibits all motor vehicles from traveling on any of the streets of that city at

a greater rate of speed than fifteen miles per hour; so that it cannot be said that in prohibiting driving at a higher rate than thirty miles per hour the city is acting contrary to the declaration of policy of the state in punishing speeding upon public highways. The effect of section 26 of the ordinance is only to impose a punishment for a more flagrant violation of the rights of the public than the legislature has seen fit to punish. This section does not attempt to legalize that which the state has declared unlawful, nor has it violated the rule that municipalities may not by ordinance prescribe a different penalty for the same offense, which was declared in *Re Sic*, 73 Cal. 142, [14 Pac. 405], and which has been approved in several later cases. (*Ex parte Stephen*, 114 Cal. 282, [46 Pac. 86]).

It is well settled that the mere fact that the state, in the exercise of the police power, has made certain regulations, does not prohibit a municipality from exacting additional requirements. So long as there be no conflict between the two, and so long as the requirements of the municipal by-law are not in themselves pernicious as being unreasonable or discriminatory, both will stand. (*Ex parte Hong Shen*, 98 Cal. 681, [33 Pac. 799]; *Ex parte Hoffman*, 155 Cal. 114, [99 Pac. 517]). The decision in *Ex parte Hoffman*, relied upon by petitioner, is not inconsistent with the position that the ordinance before us is valid, but rather sustains the view that it is. It was there held that an ordinance which established a higher standard for pure milk than that fixed by the state law was not void because in conflict with the general law. Says Henshaw, J., writing the opinion: "The state in its laws deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often, and does often, happen that the requirements which the state sees fit to impose may not be adequate to meet the demands of densely populated municipalities, so that it becomes proper, and even necessary, for municipalities to add to state regulations provisions adapted to their special requirements. Such is the nature of the legislation here questioned." Elsewhere in the opinion it is said: "If the city of Los Angeles had provided that milk might be vended which contained less percentum of milk fats than that exacted by

the state law, there would be presented a plain case of conflict. The municipality would be endeavoring to legalize that which the state had declared to be unlawful. But what the city has in fact done has been to impose not fewer, but additional, qualifications upon the milk which may be vended to its consumer."

The power of the city to pass such an ordinance is not open to question. The provisions of the freeholders' charter of the city as it stood at the time of the passage of the original ordinance were sufficient to authorize its passage. But if it were conceded that they were not, the amendments to the charter adopted in 1909, prior to the passage of ordinance No. 18,435, expressly confer such authority on the city. The last-named ordinance is a complete enactment in itself. That it purports to amend ordinance No. 15,775 does not affect the matter, since a title to an ordinance is not required by law, and if it be given one, this is no part of the ordinance.

The ordinance does not attempt to interfere with the reasonable exercise of the "right of passage over public highways" so strenuously contended for by petitioner; it merely endeavors to regulate and prevent abuse in the exercise of that right. The distinction between the two is quite obvious. The "right of passage" of motor vehicles is not specially restricted because the owners or operators thereof are required to conform to local traffic regulations made applicable to all kinds of vehicles. All other travelers are required to conform to the local ordinances of the communities in which they travel, and it is no discrimination against one class that they along with all others should be required to adapt themselves to the rules governing the local residents of a city in the use of its streets. There is nothing unusual or discriminatory in this effect of the ordinance, as it is the universally acknowledged right and province of each municipality to regulate the rates of speed of travel upon its own streets. (Dillon's Municipal Corporations, 4th ed., sec. 393; 28 Cyc. 907.) Of course, it could not be, and is not, contended that this power extends to the exclusion of the motor vehicle from the use of the streets of a municipality.

The ordinance is not invalid because one of its sections makes the speed limitations inapplicable to the vehicles operated by the fire and police departments of the city. The

cases cited by petitioner under this head do not sustain the contrary of this, while in the case of *State* v. *Sheppard,* 64 Minn. 287, [67 N. W. 62, 36 L. R. A. 305], it was held that an ordinance which prescribed a maximum rate of speed of six miles per hour without excepting the city fire department from its operation was unreasonable and invalid to that extent, although otherwise a valid exercise of the police power which might be enforced as to all others violating its provisions. The exemptions made by section 15 of the ordinance were proper and did not invalidate the ordinance.

Petitioner contends that, notwithstanding the ordinance by its terms includes all kinds of vehicles, the speed limit fixed by section 26 is so high that only motor vehicles can make the speed necessary to violate this provision, and therefore the section discriminates against the operators of motor vehicles. Respondent suggests that the effect of this argument is to establish that the motor vehicle act is special legislation and discriminative in favor of operators of motor vehicles, not by implication or inference, but expressly, as indicated by its title as well as its terms, and therefore the act itself is invalid, measured by the same rule. We are inclined to the view that there is enough difference between power-impelled and animal-drawn vehicles to justify their separate classification for purposes of legislation, but we are not required to pass upon this question, nor to assume that there is such a difference that we can say that an ordinance including both was intended to affect only one. The purpose of the ordinance would be accomplished, the protection of human life and limbs as well as property, by deterring every vehicle, whatever its kind, from passing through the streets at an excessive rate of speed.

The reasonableness of a regulation such as we are here considering depends upon its purpose and the conditions requiring it to be made. It is intended to prohibit, not to punish. The offense created by its violation is *malum prohibitum* and not *malum in se,* and the penalty must in such cases rest largely in the sound discretion of the legislative branch of the government and be such as is necessary to prevent the act which is prohibited. It being deterrent and not punitive in character, there is no element of compensation for a breach to be considered. It is apparent, from the fact that section 26

was added after the penalties of fine or imprisonment had been on trial some time, that these provisions had proven ineffective. Not because of the mildness of the penalties before provided, as the terms of imprisonment were equally severe with those contained in section 26, but because, we must assume, the alternative of fine had been imposed by the courts instead of the imprisonment. The ordinance had failed to deter the rapid operator from violating the law, and as a remedy for this the legislative branch withdrew from the courts, in aggravated cases, the power to impose a fine. We find no point at which the reasonableness of the exercise of this discretion is open to attack.

The penalty attached to the charge upon which petitioner is held is not so excessive as to be out of harmony with the laws of the state. For the first offense he might, under the state law, had he exceeded the rate of twenty miles per hour, have been penalized in the sum of $100 and imprisonment for thirty days in the county jail. Under the provisions of section 26 of the ordinance, for exceeding the rate of thirty miles per hour he may be imprisoned not less than ten nor more than fifty days in the city jail. That the hazard to life and property increase with the speed of the machine and the corresponding difficulty of keeping it under control must be conceded. Indeed, it would seem not unreasonable to say that where the state legislature, after a careful consideration of the subject, has declared that fifteen miles per hour is a proper maximum for speed in an incorporated city, and a municipality has extended this limit to twenty miles per hour, that the person who drives his machine through the streets of a city at a rate in excess of thirty miles per hour is guilty of wantonly defying all law and restraint.

We have not examined all the sections of the Penal Code to ascertain whether any of the misdemeanors therein mentioned are made punishable by imprisonment for the first offense without the alternative of a fine. The only sections of the Penal Code, to which our attention has been called, which purport to regulate the conduct of a person who, for love of sport, or speed, is willing to imperil the lives of others, are sections 348 and 349. The first of these makes it a felony for the captain of a steamboat carrying passengers, who, either from ignorance or gross neglect, *or for the purpose of excelling*

*any other boat in speed,* allows the boilers of his boat to be overstrained so as to burst and thereby endanger human life. Section 349 makes it a felony for an engineer or person having charge of a boiler to do practically the same thing. No injury to a human being is necessary to establish the offense in either case. The endangering of human life is alone sufficient. In such cases no intent is requisite, as they, like the matter before us, come within the purview of the last clause of section 20 of the Penal Code: "In every crime or public offense there must exist a union, or joint operation of act and intent, *or criminal negligence.*"

If the carrying of passengers by the owner of an automobile for hire at a rate in excess of thirty miles per hour were to be declared by the legislature to so endanger their lives as to justify the classification of this act with that of the steamboat captain, covered by section 348, that is, to be a felony, we are of opinion that it could not well be said that such legislation was unreasonable or out of harmony with the other penal legislation of the state. The imperiling or endangering of the lives of citizens upon the streets of a city by the same act may, we think, be made punishable with imprisonment in the city jail for from ten to fifty days without subjecting the ordinance doing this to the criticism that it is out of harmony with the other penal laws of the state because imposing an excessive punishment.

The ordinance being valid on the grounds stated, it becomes unnecessary to consider the question whether or not it can be sustained as legislation relating to a "municipal affair" under section 6 of article XI of the state constitution. The writ is, therefore, discharged and the prisoner remanded to the custody of the chief of police.