[Civ. No. 2555.  First Appellate District, Division One.—November 22, 1918.]

## ERNEST MUTHER et al., Respondents, v. WILLIAM H. CAPPS, Appellant.

NEGLIGENCE—ACTION FOR DEATH BY AUTOMOBILE ACCIDENT — STREET CROSSING—INSTRUCTION AS TO OBSTRUCTED VIEW.—In this action for damages for death by an automobile accident, an instruction as to what is a negligent rate of speed where the chauffeur's view of the road traffic is obstructed is held to be unwarranted, there being no evidence in the record that the defendant's view was obstructed.

ID.—"REGULAR CROSSING FOR PEDESTRIANS."—An instruction in such case as to the rate of speed prohibited by the state law at a "regular crossing for pedestrians" was erroneous and misleading to the jury and prejudicial to the defendant, since those words do not occur in the state law.

ID.—MUNICIPAL CORPORATIONS — CONFLICT BETWEEN STATE LAW AND LAW UNDER FREEHOLDERS' CHARTER.—Where there is a conflict between a state law and a city ordinance, under a freeholders' charter, in regard to a municipal matter, the city ordinance will prevail.

ID.—EVIDENCE—MUNICIPAL ORDINANCE — JUDICIAL NOTICE.—The court cannot take judicial notice of a city ordinance, and, therefore, if in this case the defendant wished to negative the effect of the state law, he should have made the city ordinance a part of the record, so that the court could determine whether or not the two were in conflict.

ID.—INTERSECTING HIGHWAY DEFINED.—The statutory definition of an "intersecting highway" (Stats. 1917, p. 382, sec. 1, subd. 14), is the only one which can be properly applied to the law and the facts of this case.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  Bernard J. Flood, Judge.

The facts are stated in the opinion of the court.

D. Hadsell, Joe G. Sweet, E. A. Ingalls, and Hiram W. Johnson, Jr., for Appellant.

Geo. J. Steiger, Jr., and S. S. McCahill, for Respondents.

LENNON, P. J.—This is an action in tort to recover damages for alleged negligence on the part of the defendant. The action grows out of the death of Anna Muther, who was the wife of Ernest Muther, plaintiff herein, caused by injuries received by her by being run over by an automobile owned and driven by the defendant. The plaintiff sues individually and as guardian *ad litem* for his minor children. Judgment was given on a verdict for plaintiffs for the sum of fifteen thousand dollars. The defendant has appealed, and assigns as error, among other things, certain instructions given by the court to the jury over the objections of defendant.

The trial court instructed the jury as follows:

"If you believe from the evidence that the defendant operated his automobile over the regular crossing for pedestrians, along Market Street at the intersection of Valencia Street, and that the defendant's view of the road traffic was then and there obstructed, at a greater rate of speed than ten miles an hour, such operation of said automobile at said speed in excess of ten miles an hour, constitutes a *prima facie* case of negligence, and the defendant is liable to the plaintiffs for all loss and damage proved to have been sustained by them by reason of such negligence."

This instruction evidently was prompted by the provisions of section 22 of Act 2331b of the general laws of the state of California, which reads in part as follows:

" . . . provided, further, that in any event no person shall operate or drive a motor or other vehicle on any public highway where the territory contiguous thereto is closely built up, at a greater rate of speed than twenty miles an hour, or in the business district of any incorporated city and county, city or town, at a greater rate than fifteen miles an hour, or at a greater rate of speed than ten miles an hour, where the operator's or chauffeur's view of the road traffic is obstructed either upon approaching an intersecting way, or in traversing a crossing or intersection of ways, or in approaching or traversing a crossing or intersection of ways. . . . "

We think this instruction was not warranted by the evidence as disclosed in the record. There is no evidence in the record that the view of the defendant was obstructed. On the contrary, the evidence of plaintiffs' own witnesses is that there was nothing to prevent the defendant from seeing the de-

ceased. The only evidence relied upon by respondent in his brief in support of this portion of the instruction is the testimony of the defendant as follows:

"Q. When you made that stop at Haight and Gough Streets, did you notice any other jitney buses stopping with you?

"A. Yes, several all around me.

"Q. Any in front?

"A. One or two, I think.

"Q. And any at the sides, and behind?

"A. Yes, sir.

"Q. After the car passed, did you go out Market Street?

"A. Yes, sir.

"Q. Did you notice whether or not any jitney buses were in front of you or not?

"A. There were three or four turned out Valencia Street."

From an examination of the map of the territory, which is embodied in the record, it will readily be seen, as pointed out by appellant, that automobiles which turned out Valencia Street could not possibly have obstructed the view of defendant at the place where the accident occurred.

Moreover, we are of the opinion that no "crossing or intersection of ways," within the meaning of the law, exists at Market and Valencia Streets, as stated in the instruction given, and which would be necessary to make the ten-mile speed limit apply.

In order to understand the relation of the two streets above mentioned, it is necessary to examine a map of that district, which map is a part of the record. From this it will be seen that the line of Valencia Street never crosses Market Street. The territory of Valencia Street merely comes up to and meets Market Street. According to the definitions given in Webster's Dictionary, the words "intersect" and "cross" mean practically the same thing, and the situation here does not fall within any of the definitions. The supreme court of Connecticut, in discussing a very similar condition in the case of Atwood v. Connecticut Co., 82 Conn. 539, [74 Atl. 899], cited by appellant, said:

"Ordinarily we do not speak of a street which starts from or terminates in another as intersecting it. It is only when it crosses or cuts through the other that it is said to intersect it."

In that case the court, in discussing the matter, said that while some reason might exist for the application of an ordinance regulating speed at crossing and intersecting streets, to a place where one street terminates at another, yet the necessity for it is much less in such a case than it is where one street actually crosses the other. In the latter case there is likely to be more traffic in the intersecting street and the through traffic would be directly across the railroad tracks, and also travel turning from one street into another is apt to be at less speed and to be accompanied with more caution than direct travel across an intersecting street.

The words "regular crossing for pedestrians," used in the instruction, do not occur in the state law, and there is nothing therein which limits the speed to ten miles an hour at such a place. The crossing referred to in the state law is a "crossing of ways" or streets. A pedestrian crossing may or may not be at the same place, but the insertion of such words in the instruction, we believe, was misleading to the jury.

If it be true that the place where the accident happened did not come under the prohibition of speed in excess of ten miles an hour—then the defendant was entitled under the law to maintain a speed of fifteen miles an hour. The testimony is all to the effect that he was going at about fifteen miles an hour. It would have been necessary for the jury to have found that he was exceeding that speed in order to raise a *prima facie* case of negligence. The instruction complained of was not warranted by the evidence or the law, and under the particular circumstances of the case it was misleading to the jury, and to that extent was prejudicial to the defendant.

Although this conclusion is decisive of this appeal, yet, in view of the fact that the case must be retried, it seems desirable for us to consider another point raised by defendant, which may become material upon the retrial.

The trial court instructed the jury in terms of the general laws of the state of California regulating the speed of motor vehicles, etc. The defendant insists that the regulation of the speed of motor vehicles, being a regulation of the use of streets, is clearly a "municipal matter," and the control of the same is given to the city of San Francisco under section 6 of article XI of our state constitution, and by the terms of the city charter of San Francisco, and that the state law is there-

fore inoperative, and instructions in terms of the state law are erroneous.

It has been held in the case of *Loop Lumber Co.* v. *Van Loben Sels,* 173 Cal. 228, [159 Pac. 600], that in so far as a freeholders' charter makes provision relative to any municipal affair, it is the supreme law paramount to any law enacted by the state legislature, and general laws enacted by the legislature in regard thereto have no application. The court decided in that case that a state law requiring the furnishing of a bond by a contractor for the protection of materialmen, etc., before such contractor shall enter upon the performance of any work upon buildings, etc., for the state or any county, city, town or district therein, is ineffectual for any purpose whatsoever where the city of San Francisco has provided in its charter all the conditions to be imposed upon a contractor prerequisite to doing such work, which conditions do not include the giving of such a bond, and that a bond given to comply with such a statute is given without consideration.

But this case proceeds upon the theory that such a provision in the state law would be in conflict with the city law, and the state law must therefore give way to the city ordinance.

To the same effect is the case of *City of Los Angeles* v. *Central Trust Co.,* 173 Cal. 323, [159 Pac. 1169], in which it is said:

"These provisions [in the city charter of Los Angeles] related to municipal affairs and as we have said, they are paramount to general laws and supei..ede such laws where inconsistent therewith."

The law, then, seems to be that where there is a conflict between the state law and the law of a city holding a freeholders' charter, in regard to a municipal matter, the city ordinance will prevail. While there is a statement in *In re Hoffman,* 155 Cal. 114, [132 Am. St. Rep. 75, 99 Pac. 517], indicating that where a conflict exists between the charter and the state law, the state law will prevail—the decision of this question was not necessary to the determination of the case, because the court decided in that case that the laws under consideration were not in conflict, and, therefore, such statement was mere *obiter dicta,* and the case cannot be considered as in conflict with the other two cases above mentioned. The authorities, such as *In re Smith,* 26 Cal. App. 122, [146 Pac. 82], holding that in case of conflict the state law will prevail,

will be found upon examination to deal with the laws of cities which have not freeholders' charters.

Under the principle enunciated in the cases of *Loop Lumber Co.* v. *Van Loben Sels* and *City of Los Angeles* v. *Central Trust Co., supra,* the question presented in the case at bar would be whether or not the two laws were in conflict. But an examination of the question of whether or not the state motor vehicle law is in conflict with the city ordinance regulating the speed of motor vehicles could not be made by the trial court for the reason that, so far as the record discloses, there was no city ordinance before the court. The court cannot take judicial notice of a city ordinance, and if defendant wished to negative the effect of the state law, he should have made the city ordinance a part of the record so that the court could determine whether or not the two were in conflict. In the absence of any city ordinance in the record, the court cannot proceed upon the theory that a conflict exists between the city and the state laws, and, therefore, for the purposes of this case, the state law must necessarily be operative. For it has been held that where no conflict exists, both laws will stand (*Ex parte Snowden,* 12 Cal. App. 521, [107 Pac. 724]), and, of course, either would stand alone in the absence of the other.

The judgment is reversed.

Beasly, J., *pro tem.,* and Sturtevant, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 21, 1919, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing is denied, but in doing so it should be noted that while ordinarily the definition of an intersecting street or highway may be that declared in the opinion of the district court of appeal, nevertheless the statutory definition of an "intersecting highway" (sec. 1, subd. 14, Act 2331b, General Laws 1917) is the only one which can be properly applied to the law and the facts of the case.

All the Justices concurred.