[Civ. No. 2201. Third Appellate District.—June 10, 1920.]

O. H. HELMER, Petitioner, v. SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

[1] MUNICIPAL CORPORATIONS—LEGISLATIVE POWER RELATING TO MUNICIPAL AFFAIRS.—The constitution (section 6 of article XI) has granted to chartered cities the power to enact ordinances relating to "municipal affairs," which ordinances prevail over acts of the state legislature inconsistent therewith.

[2] ID.—DRIVING OF MOTOR VEHICLE WHILE INTOXICATED—SUPREMACY OF STATE LAW OVER CITY ORDINANCE.—The act of driving a motor vehicle upon a public highway within the limits of a chartered city while under the influence of intoxicating liquors is not a "municipal affair," as that term is used in section 6 of article XI of the state constitution; therefore section 17 of the Motor Vehicle Act, which makes that act a felony or, in the discretion of the court, a high-grade misdemeanor, is paramount to a municipal ordinance making such act only a misdemeanor.

[3] ID.—MUNICIPAL AFFAIRS — FLUCTUATION OF TERM.—The term "municipal affairs" is not a fixed quantity, but fluctuates with every change in the conditions upon which it is to operate.

[4] ID.—POLICE POWER OF STATE—EXTENSION OF PROTECTION TO INHABITANTS OF CITY.—The state may by appropriate penalties protect life, liberty, property, and the public peace in every part of its territory, and, except as to matters of purely municipal concern, it may extend this protection to the denizens of crowded cities the same as to those in rural districts.

PROCEEDING in Prohibition to prevent the Superior Court of Sacramento County, and Malcolm C. Glenn, Judge thereof, from trying the petitioner for a violation of section 17 of the Motor Vehicle Act. Petition dismissed.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber for Petitioner.

Hugh B. Bradford, District Attorney, and J. R. Hughes, Assistant District Attorney, for Respondents.

PREWETT, P. J., *pro tem.*—The petitioner is charged in said superior court with the crime of driving a motor vehicle upon a public highway within the city of Sacramento while under the influence of intoxicating liquors. Said of-

fense is made a felony or, in the discretion of the court, a high-grade misdemeanor, by section 17 of the Motor Vehicle Act. Section 20 of Ordinance No. 282 of said city prohibits the same act but makes of it only a misdemeanor. Said city is governed by a charter adopted in the year 1911. Petitioner insists that the provisions of said ordinance prevail over the Motor Vehicle Act and that, if he is prosecuted at all, it should be under the provisions of the ordinance. Said respondent has overruled his several objections to the proceedings in said superior court and proposes and intends, unless restrained by this court, to proceed with the trial of the charge against him.

This constitutes the only question to be determined in the case.

[1]   (1) The respondent concedes that the constitution has granted to chartered cities the power to enact ordinances relating to "municipal affairs," which ordinances prevail over acts of the legislature inconsistent therewith. There are many authorities so holding. (*City of Los Angeles* v. *Central Trust Co.*, 173 Cal. 323, [159 Pac. 1169], and *Loop* v. *Van Loben Sels*, 173 Cal. 228, [159 Pac. 600].)

[2]   (2) The Motor Vehicle Act, so far as it applies to this case, is inconsistent with the ordinance of the city of Sacramento, above referred to, since the former makes of the offense a potential felony, while the latter makes of it only a misdemeanor. If the offense in question is a "municipal affair," as that term is used in section 6 of article XI of the constitution, it must be conceded at once that the city ordinance is paramount. The regulation of street traffic has usually in the near past been treated as a municipal matter. Until the advent of the automobile, interurban traffic was so small as to be negligible and, as a result, traffic regulations were a matter of concern only to the inhabitants of the city. But when autos and motor-trucks invaded our highways and streets in tens and hundreds of thousands, a matter that yesterday was local has become of state and nation-wide importance to-day. An amendment to the constitution has in a measure recognized this growth and has authorized the state to establish a system of state highways (sec. 36, art. IV) to meet its demand.

[3]   The term "municipal affairs" is not a fixed quantity, but fluctuates with every change in the conditions upon

which it is to operate. Interurban traffic has grown in the past ten years into enormous proportions. It is said that during the past year tens of thousands of autos entered this state from other states. Tabulations made since this case was submitted justify the conclusion that ten or twelve thousand motor vehicles enter the city of Sacramento every ordinary business day. It is common knowledge that the number of auto passengers entering some of our cities on special occasions exceeds, in a single day, the entire population of the city. The great number of autos, their high speed, their use of a nonintelligent motive power, the want of adequate room on roads and streets not laid out for such a congested traffic, and the overwhelming necessity for uniformity in handling the traffic, all have forced the conviction that the proper and orderly handling of this stupendous traffic has become a matter of the gravest concern to the people of the entire state. If the ordinance in question were the paramount law, then the city of Sacramento could provide that the signal for, say, a left-hand turn, should be an uplifted arm. It is needless to say that such a regulation would be a great danger to thousands of residents and non-residents every day in the year. In short, almost every citizen of the state has as great an interest in the traffic regulations of neighboring cities as he has in his rural highways about him and vastly more concern as to what they are and how they are to be observed. It may be doubted whether any other police problem requires such unfailing uniformity, one city or locality with another, as that of handling the endless procession of motor vehicles on our highways. That the legislature intended the provisions of the Motor Vehicle Act to be supreme is beyond question. (Stats. 1919, sec. 22, p. 220.)

The earlier cases holding that cities may pass local and police regulations governing motor traffic are of little value in this connection, since it is clear that, in the absence of a Motor Vehicle Act, a city has such power under the provisions of the constitution.

Since the advent of motor vehicles in such vast numbers and the passage of the Motor Vehicle Act, a number of cases have been decided by our state courts involving traffic regulations of the state and of chartered cities, and it is a persuasive fact that in no case has it been held that the city

ordinance is supreme. The contrary assumption appears to have been universal. It is insisted that *Ex parte Snowden*, 12 Cal. App. 521, [107 Pac. 724] holds that the city ordinance is paramount; but an examination of the case discloses that the court arrived at the conclusion that no conflict. existed, hence any observations as to the effect of a conflict were unnecessary to a disposition of the case and are not authoritative. Moreover, the infractions considered in that case took place under the Motor Vehicle Act of 1907 and at a date when autos had not become a matter of such universal interest, and, in addition, the act itself permits municipalities to establish speed limits.

Petitioner cites *City of Los Angeles* v. *Central Trust Co.*, *supra*, as sustaining his position. But that case involved neither speed limits nor intoxication and concerned only the opening of a street. The question as to the paramount effect of the Motor Vehicle Act was in no way involved. The case is not authority in this connection. Petitioner relies mainly, however, upon the more recent case of *Muther* v. *Capps*, 38 Cal. App. 721, [177 Pac. 882], and he cites this case as showing that a speed ordinance of the city and county of San Francisco, if in conflict with the Motor Vehicle Act, is paramount thereto. But the case does not justify this position. A number of different questions were involved in that case. It was insisted by the appellant that a conflict existed between the ordinance and the state law; but the court expressly held that no ordinance was before it and it does not decide, and does not purport to decide, the question of supremacy.

The Motor Vehicle Act was devised to meet a new and extraordinary condition, and it demands such a construction in view of the facts which brought it into existence as will maintain its symmetry and integrity unimpaired, if this can be done under established canons of adjudication.

There are, it happens, two California cases, which, by the strongest implication, if not in direct terms, uphold the position of respondents. The first of these is *Mann* v. *Scott*, 180 Cal. 550, [182 Pac. 281]. In this case the court says: "Upon a careful reconsideration of appellant's contention, that the state Motor Vehicle Act of 1913 is controlling law upon the subject and that it was error to give an instruction embodying the regulatory provisions of the city ordinance,

we are constrained to confirm the opinion of the district court of appeal that the municipal ordinance in the respect noted is not inconsistent with the state law, but was valid and operative in the city of Los Angeles at the time of the plaintiff's injury. And this, we think, is so regardless of the question of whether or not the regulation of traffic upon the streets of a city is a 'municipal affair.' Conceding that, if there were in fact a conflict between the ordinance and the state Motor Vehicle Act, the state law would prevail, still we find no conflict or inconsistency between the two enactments.''

And the following language, quoted from the same case, is particularly in point and may be cited as a distinct recognition by the court of the turning point in conditions which have made the regulation of auto traffic a matter of state and general concern: ''Upon a careful analysis of the Motor Vehicle Act of 1913 and of its purpose viewed in the light of the traffic conditions upon which it was intended to operate, we are of the opinion that the reasoning of the court in the case last quoted is decisive of the question now presented. In other words, we believe that by extending the operation of the act in terms to the traffic upon city streets, the legislature did no more than to prescribe obviously necessary safeguards for travel upon such streets viewed as a part of the public highways of the state in which all the people of the state are interested, and that it did not thereby intend to prohibit the enactment of such new and additional police regulations in furtherance of the purposes of the act as might appear reasonable and proper in a given locality. It is true that the Motor Vehicle Act of 1915 expressly limited the scope of such police regulations. (Stats. 1915, p. 409, c. 188, sec. 22d.) It may, perhaps, be open to question whether the ordinance here in controversy falls within the prohibition of that act, but it is sufficient for the purposes of this case to say that the Motor Vehicle Act as in force at the time of the plaintiff's injury did not contain a clause prescribing limitations upon the local regulation of traffic.''

In view of this language, it is impossible to avoid the conclusion that the court would have sustained the supremacy of the Motor Vehicle Act of 1915 as against a repugnant city ordinance.

The second case above referred to is that of *Ham* v. *County of Los Angeles,* 46 Cal. App. 148, [189 Pac. 462]. The following quotation therefrom will show its assumption of the paramount force of the Motor Vehicle Act: "Indeed, it seems now to be accepted law that local regulations may be adopted controlling street and highway traffic which are not in conflict with the state Motor Vehicle Act, and that such regulations are not in conflict which merely place additional and more stringent limitations upon the operation of motor vehicles than those prescribed by the state law."

(3) But viewed from another angle, the supremacy of the provision making the act a felony must be sustained.

Section 17, so far as pertinent, reads as follows: "17. No person who is under the influence of intoxicating liquor and no person who is an habitual user of narcotic drugs shall operate or drive a motor or other vehicle on any public highway within this state." It is true that the ordinances of a city are supreme in "municipal affairs." But the act charged against petitioner is not a "municipal affair." This is so, even if the claim is sound that ordinances designed to control the use of streets prevail over general laws. The act of driving a motor vehicle while under the influence of intoxicating liquors is of no immediate or special concern to the city as such. It is of general concern to the inhabitants of a city in common with all other residents of the state. There exists a doubtful or twilight zone separating those matters that are clearly of municipal concern from those that are not. This doubtful zone is of greater or less width, according to the viewpoint of the observer, but there seems to be no satisfactory reason for assigning the act in question to this doubtful zone. It is not a "municipal affair." Section 17, although it forms a part of the Motor Vehicle Act, is not a traffic ordinance. It makes no provision of any kind whatsoever as to the method of driving, the rate of speed, the side of the road to be traversed, the giving of proper signals nor, in fact, any sort of provision or condition having reference to the use of the roadway in any given manner. It relates wholly to the person himself and his then present condition, and without reference to the effect of his acts upon the roadway itself or of other persons making use thereof.

48 Cal. App.—10

The interdicted act relates to traffic no further than that a person in the prescribed condition may not avail himself of the use of the streets whereon traffic exists. A person discharging firearms or spreading poison gases while driving an auto on the highway would be a menace, much as the drunken driver is, but in no sense, would his act be a matter of municipal concern as distinguished from the general concern of the people of the state. Regulations as to speed have reference to both time and place. That which would be a reckless rate of speed in a crowded city during busy hours would entail little or no danger on a remote roadway or during slack hours. The act charged against petitioner has no reference either to time or place.

While it is more dangerous in a crowded street, it is so only because there are more persons to be injured, but as to each person it is but slightly more dangerous than to one of the smaller number in a less crowded locality. Speeding is dangerous because of the locality. The drunken driver is a danger in any locality, if there are persons present to be injured.

The fact that he is a menace to life and to private property justifies the state in prescribing penalties for the act, just as it may do for violations of general sanitary, health and comfort laws. A manslaughter committed by an intoxicated driver in driving his vehicle over a victim is as much punishable by the state when committed on the streets of a city as if committed elsewhere. A vast number of acts are made punishable by the Penal Code because their commission involves a general menace to the public, even though in their commission, no person is injured. It is a felony for an intoxicated trainman to run a railroad train. A druggist must take certain precautions in selling poisonous drugs; it is a misdemeanor to carry concealed weapons or to leave a campfire burning and unattended. These cases and dozens of others that could be enumerated demonstrate that the state, in the exercise of its sovereign power and for the protection of its people, has authority to interdict on the public highways in every part of the state the driving of a motor or other vehicle by an intoxicated person. [4] It is a fundamental rule that the state may by appropriate penalties protect life, liberty, property, and the public peace in every part of its territory. And, except as to matters of

purely municipal concern, it may extend this protection to the denizens of crowded cities the same as to those in rural districts.

Our conclusion is that the act charged against the petitioner is punishable under section 17 of the Motor Vehicle Act.

The· petition is dismissed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 9, 1920.

All the Justices concurred, except Sloane, J., who was absent.