Argued May 12; affirmed July 13, 1937

# COVEY DRIVE YOURSELF & GARAGE *v.* CITY OF PORTLAND ET AL.

(70 P. (2d) 566)

*P. J. Gallagher,* of Portland, for appellant.

*Frank S. Grant,* City Attorney, and *John B. Seabrook,* Deputy City Attorney, both of Portland, for respondents.

ROSSMAN, J.  Upon the ground that the complaint failed to state a cause of suit the circuit court sustained the defendants' demurrer.  The propriety of that action is the sole issue before us.

Omitting mention of all matters immaterial to the controversy before us, the complaint alleges that the plaintiff is engaged in the City of Portland in the business of renting automobiles without drivers; that its lessees drive its cars "upon the highways of the States of Oregon, Washington, Idaho and California, and none of the motor vehicles so owned by the plaintiff are for use exclusively within the corporate limits of the City of Portland"; that it has paid all license fees exacted by the laws of Oregon upon its vehicles; that its cars are properly equipped; that they are maintained in a good state of repair; and that on June 25, 1936, the defendant municipality passed an ordinance known as Ordinance No. 68362, which we shall now review. It provides that it shall be unlawful for any person in Portland to engage in the business of renting out driverless automobiles without first securing a license and without complying with Ordinance No. 67631. It exempts the licensee from the payment of the inspection fee required by that ordinance, which is entitled: "An ordinance providing for the inspection of motor vehicles and providing a penalty." The ordinance (No. 68362) exacts an annual license fee of $12 per car. After requiring the licensee to deposit with the city $1,000 or file either a surety bond or a liability insurance policy in the sum of $1,000, it provides:

"The cash deposit, the surety bond, or the insurance policy, shall each be conditioned that the licensee, his surety or insurer, will pay any adjudicated claim within the limit of the liability of $1,000 ten days after the date of the final adjudication of any claim. The cash deposit, the surety bond or the liability insurance shall be further conditioned that the licensee and the surety or insurer will be liable for injury to or the death of any person and for damages to the property of any person caused by the carelessness, negligent or unlawful act

of the driver of the vehicle rented or hired out. The liability of said cash deposit, said surety bond or liability insurance shall not exceed the sum of $1,000 arising out of any one accident: * * * Any person sustaining personal injuries or property damage caused by the carelessness, negligent or unlawful act of the driver of any motor vehicle rented or hired out under the terms of this article; or in case of death resulting from personal injuries, the personal representative of the deceased, is hereby authorized to institute an action against the licensee, the surety, or against the liability insurance company on his own relation in the name of the city and to prosecute the same to final judgment. * * *''

A copy of Ordinance No. 67631 does not accompany the complaint, but Ordinance No. 68362, besides making the reference to it already noted, states:

''There shall be attached to said application a duplicate of the certificate required and provided for in § 7 of Ordinance 67631 * * *. The certificate of inspection required by said Ordinance No. 67631 shall be issued to said licensee for each motor vehicle inspected without the payment of the said inspection fee.''

The complaint avers that Ordinance No. 68362 is invalid, and seeks a decree restraining its enforcement.

We have not set forth the averments which specify the alleged invalidity of the ordinance, but plaintiff's assignments of error which follow fully indicate its contentions:

''The power to charge an owner of an automobile a license fee because of the ownership or use of a car has been reserved exclusively to the legislature and has not been delegated to any municipality of the state.

''The name of the tax is immaterial—its validity is justified by its effect.

''The legislature has assumed complete jurisdiction in matters of classification of motor vehicles.

"The rights and powers exercised by municipal governments are subject to the general sovereign powers of the states that create the municipalities in all matters of general concern.

"The provisions in an ordinance for the general welfare of the citizens of the state at large are matters of state concern and decide the scope of municipal regulation.

"In all matters pertaining to highway regulation— revenues from motor vehicles and control over the same is now in the exclusive control of the state.

"The insurance feature of the ordinance transgresses the power of the city and makes the ordinance void.

"The financial responsibility of the car owners and operators is of state-wide concern and not of municipal regulation."

Section 55-106, Oregon Code 1930, which is a part of our motor vehicle laws, provides:

"The registration and license fees imposed by this act upon motor vehicles, motorcycles, motor bicycles, motor trucks, trailers, semitrailers and other road vehicles in this act described and upon the owners thereof by reason of such ownership, shall be in lieu of all other taxes and licenses, except municipal license fees under regulatory ordinances, to which such vehicles or the owners thereof, by reason of such ownership, may be subject: * * *"

This statute, as above indicated, recognizes that in addition to the regulations imposed by the state's laws further regulations by municipalities may be adopted.

Section 34, subdivision 1, of the charter of the City of Portland grants it authority "to exercise within the limits of the City of Portland all the powers commonly known as the 'police power' to the same extent as the State of Oregon has or could exercise said power within said limits." Subdivision 21 of the same section

authorizes the city "to grant licenses with the object of raising revenue or of regulation, or both, for any and all lawful acts, things or purposes, and to fix by ordinance the amount to be paid therefor." These charter grants yielded to Portland power to adopt the ordinance before us, if it conflicts with neither a constitutional provision nor with a statute, and if it constitutes a proper exercise of the city's police power.

In support of its contentions that the state has preempted the field of vehicle regulation, the plaintiff cites: *In re Fine,* 124 Or. 175 (264 P. 347); *Parker v. City of Silverton,* 109 Or. 298 (220 P. 139, 31 A. L. R. 589); *Dent v. Oregon City,* 106 Or. 122 (211 P. 909); *Mugler v. Kansas,* 123 U. S. 623 (31 L. Ed. 205, 8 S. Ct. 273); *Lidfors v. Pflaum,* 115 Or. 142 (205 P. 277, 236 P. 1059); *Burton v. Gibbons,* 148 Or. 370 (36 P. (2d) 786); *Winters v. Bisaillon,* 153 Or. 509 (57 P. (2d) 1095); and *Ex parte Daniels,* 183 Cal. 636 (192 P. 442, 21 A. L. R. 1172). In the first of these decisions an ordinance adopted by Oregon City required each operator of a "wholesale trade vehicle" in the city to pay a license fee of $120 per car annually. In the second decision a Silverton ordinance required operators of interurban stages entering that city to pay an annual fee of $300 per stage, or $75 if they conducted a depot in the city. In the third decision an ordinance of Oregon City prohibited interurban stages from entering the city unless they first obtained a city franchise. In the first decision it was apparent that the city was attempting to employ its licensing power as a means of exacting revenue under pretext of affording the streets for the passage of the vehicles; but since the state, by means of the vehicle tax, made a charge for that facility, that basis of support was unavailable. The decision pointed out that the tax was excessive for the slight regulation

which the city proposed to give to the vehicles. In the second decision the ordinance conflicted with the state's public service commission law which subjected inter-urban stages to regulation by the commission. Further, the decision pointed out: "It is manifest that this is not the imposition of a charge for mere regulatory purposes only, but is a burden intended to be imposed for revenue purposes." In the third decision the ordinance was held invalid because it conflicted with the state statutes which contemplated that the use of the public streets should be open to all without requirement of a franchise. In all three decisions this court recognized that municipalities may enact regulatory ordinances when it appears that the statutes have not exhausted the field, and when it further appears that the regulations imposed by the municipality are necessary. The fourth decision is cited by the plaintiff on account of the following statement found in it: "The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority." *Lidfors v. Pflaum* held that the city traffic ordinance upon which the plaintiff predicated his action did not conflict with the state's traffic laws and that, therefore, it was valid. *Winters v. Bisaillon* and *Ex parte Daniels* found a conflict between the municipal regulation and the state's statute and declared that the ordinance had to give way to the statute. *Burton v. Gibbons* held that a statute applicable to all of this state's cities, and authorizing them to issue refunding bonds without submitting the matter to a vote of the electors, was valid. ■■ It is evident from the foregoing that the existence of a statute upon the subject of driverless automo-

biles will not, of necessity, defeat the city's regulation of that business if no conflict exists between the two; and especially not if the ordinance is in furtherance of the policy embraced by the state's statute. The plaintiff insists that the state has pre-empted the field of traffic regulations, including regulation of driverless cars, and that, therefore, no room remains for this ordinance. It cites §§ 55-1102 and 55-1342, Oregon Code Supplement 1935. We have examined these sections of our laws, as well as all other parts of our extensive motor vehicle laws, without having found any provision similar to the attacked ordinance. Generally, an ordinance dealing with the same subject as a statute is invalid only if it is repugnant to the statute: *Miller v. Hansen,* 126 Or. 297 (269 P. 864); *Harlow v. Clow,* 110 Or. 257 (223 P. 541). The ordinance concerns itself with the occupation, whereas virtually all of the sections of our motor vehicle laws concern themselves with the vehicle. The purpose of the ordinance is to license the business, not the car. Both are intended to promote the public safety, but seek their objectives by different methods. The purpose of the ordinance is to induce the owner to rent his cars only to careful drivers, while the statute regulates what goes on after the driver has entered the car. We know of no conflict between this ordinance and any statute or state policy.

■ In the present instance, the thing which is taxed, according to our belief, is not the vehicle, but the business in which its owner is engaged. The ordinance expressly so declares and its declaration is supported by its other parts. The tax is graduated according to the number of vehicles employed in the business, but that circumstance does not render it a vehicle tax. Occupation taxes may be thus graduated: *The Great Atlantic & Pacific Tea Co. v. Alice Lee Grosjean,* 301

U. S. 412 (57 S. Ct. 772, 81 L. Ed. 1193, 112 A. L. R. 293), decided May 17, 1937; *Safeway Stores v. Portland,* 149 Or. 581 (42 P. 162); *Union $ Service v. City of Portland,* 136 Or. 287 (298 P. 919); *Portland v. Portland Ry. L. & P. Co.,* 80 Or. 271 (156 P. 1058).

It will be recalled that the ordinance requires cars used in the business in which the plaintiff is engaged to be inspected from time to time. Necessarily, this involves expense upon the city's part. Likewise the city is subjected to expense in receiving applications for licenses, in investigating the fitness of the applicant, and determining the responsibility of the insurance and surety companies which sign the applicants' undertakings. These expenses indicate that in all likelihood the $12 annual license fee per car yields no profit. We are satisfied that it is imposed not for the small income which it will produce, but for the purpose of covering the city's expenses in administering the ordinance. Moreover, a license fee may, under proper circumstances, be exacted as a means of regulating a business. We quote from *The Great Atlantic & Pacific Tea Co. v. Grosjean,* supra:

"Whatever a state may forbid or regulate it may permit upon condition that a fee be paid in return for the privilege, and such a fee may be exacted to discourage the prosecution of a business or to adjust competitive or economic inequalities. Taxation may be made the implement of the exercise of the state's police power."

We shall now proceed to determine whether the ordinance is regulatory by nature, and, if so, whether the city possessed authority to enact it, including, as it does, the provision for the indemnity undertaking. It will be recalled that the city's charter grants it authority to exercise within its limits "all the powers

commonly known as the 'police power' to the same extent as the State of Oregon has or could exercise said power within said limits.''

In *Portland v. Western Union Telegraph Co.,* 75 Or. 37 (146 P. 148, L. R. A. 1915D, 260), this court sustained the validity of a Portland ordinance which required those engaged in the messenger business to obtain a license, pay an annual license fee of $100, and file a bond in the sum of $1,000 conditioned that the licensee faithfully perform his duty. Persons damaged by the breach were granted a right of action upon the bond. The decision stated:

''As a reasonable exercise of a measure of the police power and as an incident to the authority to demand a license fee as a condition precedent to the right to pursue an occupation in which members of the public may be interested or whereby they may be affected, a municipal corporation, under a grant of power to regulate, may also lawfully require the licensee to execute to the city a reasonable bond for the faithful performance of the service authorized and to operate as indemnity for damages which individuals may sustain by reason of fraudulent conduct of the business: Freund, Police Power, § 40. The ordinance in question is reasonable in its terms, general in its application to all parties of the same class, consonant with the powers and purposes of the City of Portland, consistent with the laws and policy of the State, and is a proper exercise of the police power enacted for the purpose of regulating and not restraining occupations: Ex parte Frank, 52 Cal. 606.''

From Freund, Police Power, § 40, we quote:

''Somewhat related to the requirement of a license is that of a bond or deposit to secure the faithful compliance with police regulations, and the satisfaction of liabilities that may arise from their violation, or to serve as an indemnity fund for persons who have suf-

fered by the fraudulent conduct of the business. As a subsidiary measure of police control it appears to be permissible wherever a license may be required, but it is resorted to less frequently. A bond is required not uncommonly of liquor sellers and of auctioneers; deposits are sometimes required of peddlers, itinerant merchants, of persons advertising bankrupt sales, above all of persons or corporations engaged in the quasi-public business of banking, insurance, or warehousing.''

■ The business in which the plaintiff employs its cars is one that affects not only the safety of its lessees, who may have no means of knowing the condition of repair of the car in which they go forth, but also the safety of all other users of the public thoroughfares. The appalling number killed and maimed by automobiles is known to us all, and there are many who believe that the financial irresponsibility of some drivers accounts for their recklessness. Present enactments have been demonstrated to be insufficient for the prevention of the negligence which daily is taking the lives of many people and injuring others. This ordinance deals with a business which places upon our public streets drivers who neither own the cars which they are operating nor are subject, as the owner's agents, to his control. Conceivably many of them may be transients who will be gone before the victims of their negligence can confront them with their demands. The purpose of this ordinance is to remedy the situation arising from this irresponsibility. By rendering the owner liable to a limited extent for the results of his lessee's negligence, it seeks to coerce him into renting his cars only to those who will drive with care. It is based upon the belief that the owner in trying to protect his purse will protect all others by exercising caution in the renting of his cars. Likewise the provisions of Ordinance No. 67631 with

which the licensee must comply, but which are not fully disclosed by the record, require seasonal inspection of all cars rented without drivers. The primary purpose of the ordinance is not to render damages collectible, but to induce the owner to refrain from renting his cars to the irresponsible and negligent. The fact that $1,000 damages, if sustained, my be recovered is incidental. It is no more the primary purpose of the ordinance than is the fixing of the rule of care for personal injury actions by the enactment of city traffic regulations.

In *Hodge-Drive-It-Yourself Company v. Cincinnati*, 123 Ohio St. 284 (175 N. E. 196, 77 A. L. R. 889), the plaintiff, which was in the same business as our plaintiff, attacked the validity of an ordinance which required lessors of driverless automobiles to obtain a license and to file either a policy of liability insurance or a surety bond conditioned upon his payment of judgments recovered by any injured by his rented cars. The amounts of the policies and bonds were much larger than the amounts required by the Portland ordinance. In sustaining the validity of the ordinance, the court, after reviewing the charter powers conferred upon the city, declared:

"The power of the municipality, within its jurisdiction, in reference to regulating the business of leasing automobiles to be driven by the lessee, is as great as that of the state within its jurisdiction."

It will be recalled that Portland's charter confers upon it similar authority. Referring to the provisions for the indemnity undertakings, the court said:

"It does, by appropriate language, undertake to require that the financial responsibility of the lessees of such automobiles, to respond in damages for their own tortious acts in the operation of such automobiles,

be guaranteed either by a liability insurance policy, or by a bond; and it imposes upon the lessor of such automobile the burden of securing such policy or bond, and makes the assumption of such burden a condition precedent to the issuing of a license to such lessor to transact such business within the city.

"It is a matter of common knowledge that a consciousness of financial responsibility for negligence tends to promote care, and, conversely, that a consciousness of financial irresponsibility tends to promote indifference. The mode of operation of the business of plaintiffs is designed to make use of the public streets in a gainful occupation without incurring any financial obligation for the manner of use, such as is incurred by both common carriers and owners of automobiles using the streets in the ordinary way. * * * The fact that automobiles of this class are operated by persons who have no ownership in the operated automobiles—and that they operate under a contract which exempts the owner from the application of the doctrine of respondeat superior, which operation has been found by the experience of insurance companies and insurance men skilled in the occupation of determining degrees of hazard to be extrahazardous to the public—is quite sufficient to warrant a classification of this character of automobiles, separate from all others, and to warrant a reasonable regulation of the class. * * *

"The police power, in furtherance of public safety, health and welfare, is coextensive with the public need and the reasonableness of its exercise must be measured largely by the same standard. The daily toll of life, limb and property exacted by the operation of automobiles generally upon the public streets and highways proclaims the public need for police regulation of all automobile operation."

After the decision from which we have just quoted had been announced the plaintiff appealed to the federal supreme court. From its decision (*Hodge Drive-It-Yourself Company v. Cincinnati*, 284 U. S. 335 (76 L.

Ed. 323, 52 S. Ct. 144)), written by Mr. Justice Butler, affirming the one just reviewed, we quote:

"Appellants maintain that the measure constitutes an unreasonable interference with a purely private business and is not one for the regulation of the use of streets; that it attempts to convert appellants into public utilities and impose upon them liability without fault, and that it is discriminatory and oppressive. * * *

"It may prohibit or condition as it deems proper the use of city streets as a place for the carrying on of private business. This Court has sustained a state law requiring reasonable security for the protection of persons in respect of injuries and losses caused by the negligent operation of motor vehicles engaged in carrying persons for hire. * * * Such measures, so far as concerns constitutional validity, are not distinguishable from the ordinance under consideration. * * * This ordinance is not an interference with or regulation of a business that has no relation to matters of public concern; it rests upon the power of the city to prescribe the terms upon which it will permit the use of its streets to carry on business for gain."

In *City of San Antonio v. Besterio* (Tex. Civ. App.), 209 S. W. 472, the court sustained the validity of an ordinance which required those engaged in the business of renting driverless cars to secure a municipal license, to file a financial statement showing their assets and liabilities, and to file a bond. The precise nature of these requirements is not specified in the decision. The city's charter granted it authority to license and regulate all business carried on in the municipality whenever the city deemed such action necessary for the public good, peace and safety. We quote from the decision:

"The city has, by the enactment of the ordinance herein assailed, exercised the power given it by the above section of its charter. The section of the charter

itself is not claimed to be in violation of the Texas Constitution. The contention is that the business of appellees is a private and not a public one over which alone the police power can be exercised. In our opinion, the business affects the general public as the pleadings and evidence clearly disclose. The appellees for their own profit offer numbers of automobiles for use to the general public for hire. It is apparent that the general public welfare requires that reasonable precaution be taken to protect the using public against dangerous machines, and that precautions be taken to prevent injury and inconvenience to the traveling public by the indiscriminate use of these automobiles, and it is also apparent that this business may be used for immoral purposes. * * * There is greater necessity, it seems to us, for the city to regulate this use of the streets when the driving is done by lessees instead of employees. Where the automobiles are driven by employees over whom the employer has supervision and control, there is likely less danger to the public, and the immoral uses possible can be more readily checked than where the automobiles are promiscuously, if not indiscriminately, let to the public. Since the business contemplates and does in fact make use of the streets, the business is subject to license and regulation by the city.''

In *Levy v. Daniels' U-Drive Auto Renting Co., Inc.,* 108 Conn. 333 (143 Atl. 163, 61 A. L. R. 846), the lower court sustained a demurrer to a complaint which alleged that the defendant in Hartford rented a car to one Sack in which the plaintiff was injured while riding as Sack's guest in Massachusetts and through Sack's negligence. A Connecticut statute provided:

''Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased.''

The defendant, in arguing in support of the lower court's action, contended that the action set forth in

the complaint was one of tort, and that since Massachusetts had no statute like the above the plaintiff could not recover without alleging and proving that the car was defective. In holding the statute valid, that it afforded a basis for a recovery in Connecticut, and that, therefore, the lower court erred in sustaining the demurrer, the Supreme Court of Errors declared:

"The purpose of the statute was not primarily to give the injured person a right of recovery against the tortious operator of the car, but to protect the safety of traffic upon highways by providing an incentive to him who rented motor vehicles to rent them to competent and careful operators by making him liable for damage resulting from the tortious operation of the rented vehicles. The common law would not hold the defendant liable upon the facts recited in the complaint for the negligence of Sack in the operation of this automobile. Huddy on Automobiles (8th Ed.) § 200, and cases cited. The rental of motor vehicles to any but competent and careful operators, or to persons of unknown responsibility, would be liable to result in injury to the public upon or near highways, and this imminent danger justified, as a reasonable exercise of the police power, this statute, which requires all who engage in this business to become responsible for any injury inflicted upon the public by the tortious operation of the rented motor vehicle. Blashfield, in Cyclopedia of Automobile Law, Vol. 2, p. 1318, expresses the opinion that 'of late there has been a tendency on the part of the courts to break away from the rigid limitation of the liability of the owner of the automobile to the strict application of the doctrine of respondeat superior. * * * 'Thus,' he continues, 'in some States, there are statutes providing, in effect, that every owner of a motor vehicle operated upon the public highway shall be liable for injuries resulting from negligence in the operation of such motor vehicle in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner, and such statutes are within

the police power of the State.' He cites a number of authorities in support of his statement. Statutes of this character are so clearly within the reasonable exercise of the police power that we do not deem it necessary to fortify his opinion, or the opinion we have already expressed, by detailed reference to the cases. The statute made the liability of the person renting motor vehicles a part of every contract of hiring of a motor vehicle in Connecticut. * * * The contract was made in Connecticut; at the instant of its making the statute made a part of the contract of hiring the liability of the defendant which the plaintiff seeks to enforce. The law inserted in the contract this provision. The statute did not create the liability; it imposed it in case the defendant voluntarily rented the automobile. * * *''

In *Smallwood v. Jeter,* 42 Idaho, 169 (244 P. 149), the court sustained the validity of a statute which required auto transportation companies to file with the state liability insurance policies or surety bonds for the benefit of those injured while being transported. The amount of the undertaking which began at $5,000 was graduated upward according to the capacity of the vehicle and the number injured or killed. In sustaining the validity of the act, the court declared:

"The bonding feature is entirely a police regulation. * * * We are content to rest our decision as to the propriety of requiring a bond upon the reasoning of such cases as West v. City of Asbury Park, 99 A. 190, 89 N. J. L. 402, and People v. Martin, 197 N. Y. Sup. 28, 203 App. Div. 423.''

In *Robinson v. Bruce Rent-A-Ford Co.,* 205 Iowa 261 (215 N. W. 724, 61 A. L. R. 851), the court sustained the validity of a statute which provided:

"In all cases where damage is done by any car driven by any person under 15 years of age, and in all

cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage.''

We quote from the opinion the following:

"Similar statutes have been enacted in other states, and construed by the courts of at least two of them. The Michigan statute provides that the owner shall not be liable for damages caused by the negligence of another unless the motor vehicle is being driven by the express or implied consent or knowledge of the owner. This statute was construed in Stapleton v. Independent Brew Co., 198 Mich. 170 (164 N. W. 520), and given effect according to its terms. A judgment rendered in the court below against the owner of an automobile for damages resulting from the negligent operation thereof by the Detroit Axle Company, to which it was loaned, for use in its business, was affirmed. Referring to this case in Van Oster v. Kansas, 272 U. S. 465 (71 L. Ed. 354), the Supreme Court of the United States, in construing another statute in which a similar principle was involved, said:

" 'They [the statutes in question] have their counterpart in legislation imposing liability on owners of vehicles for the negligent operation by those entrusted with their use, regardless of a master-servant relation.'

"Thus, in a measure, the Supreme Court of the United States recognized the validity and propriety of statutes of the character involved.

"A statute similar to the Michigan statute is in force in the state of New York. So far as the cases have been brought to our attention, the New York statute has not been construed by the court of appeals, but liability of the owner under circumstances similar to those in the pending case has been held in two cases in that state. Feitelberg v. Matuson, 124 Misc. Rep. 595 (208 N. Y. Supp. 786); Plaumbo v. Ryan, 213 App. Div. 517 (210 N. Y. Supp. 225). * * *

"It is suggested by counsel for appellant that Section 5026, thus construed, is violative of the due-process

clauses of the Constitution of the State of Iowa and of the United States. It is doubtful if this question was properly raised in the court below, but, if so, it is without merit. All courts recognize motor vehicles as dangerous instrumentalities, particularly when operated by a negligent or incompetent person. The statute in no wise permits the taking of property without due process of law, but merely extends the liability of the owner for damages inflicted or caused by a motor vehicle owned by him and operated by another with his consent. There is, obviously, no infringement, by this statute, of any constitutional right of the defendant's.''

See, also, *Heavilin v. Wendell,* 214 Iowa 844 (241 N. W. 654, 83 A. L. R. 872). The annotation reviews other decisions sustaining the validity of similar legislation. See, also, 5 Amer. Jur., Automobiles, p. 732, § 398.

In *Young v. Masci,* 289 U. S. 254 (77 L. Ed. 1158, 53 S. Ct. 599, 88 A. L. R. 170), the facts were that the defendant who was a citizen and resident of New Jersey, loaned his automobile for a day to one Balbino, who was not his agent, to use as Balbino desired. The latter drove the car into New York for his own purposes and there negligently injured the plaintiff, who then instituted an action in New Jersey. A New York statute provided.

''Every owner of a motor vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with permission, express or implied, of said owner.''

From a judgment in favor of the plaintiff recovered in the New Jersey courts, the defendant appealed to the United States supreme court where the judgment was

sustained in a decision from which the following is quoted:

"Young appealed to this Court on the ground, among others, that the statute as applied violates the due process clause of the Fourteenth Amendment. He does not challenge its constitutionality on the broad ground that an owner cannot be made liable for the driver's negligence unless the relation of master and servant exists. The contrary had been held in New York in respect to this statute. Downing v. New York, 219 App. Div. 444, 446, 220 N. Y. Supp. 76, affirmed in 245 N. Y. 597, 157 N. E. 873; Dawley v. McKibben, 245 N. Y. 557, 157 N. E. 856. And in Van Oster v. Kansas, 272 U. S. 465, 467, 71 L. ed. 354, 358, 47 S. Ct. 133, 47 A. L. R. 1044, where it was held that the due process clause does not prevent a State from forfeiting property of an innocent owner for the unauthorized act of one to whom he has entrusted it, the Court states that it is not 'uncommon for the law to visit upon the owner of property the unpleasant consequences of the unauthorized action of one to whom he has entrusted it'; and refers to the legislation of New York 'imposing liability on owners of vehicles for the negligent operation by those entrusted with their use, regardless of a master-servant relation.'

"The power of the State to protect itself and its inhabitants is not limited by the scope of the doctrine of principal and agent. The inadequacy of that doctrine to cope with the menacing problem of practical responsibility for motor accidents has been widely felt in cases where the injurious consequences are the immediate result of an intervening negligent act of another."

The plaintiff, in support of its contention that the police power does not authorize the enactment of legislation requiring indemnity undertakings, cites: *State v. Sasseen,* 206 N. C. 644 (175 S. E. 142); *State v. Gulledge,* 208 N. C. 204 (179 S. E. 883); *Genusa v. City of Houston* (Tex. Civ. App.), 10 S. W. (2d S.) 772. We have read the first two of these decisions without being

satisfied that they contain anything at variance with the several decisions above reviewed. In the third cited decision an ordinance of the City of Houston required anyone who rented a driverless car to file a bond or policy of insurance in the sum of $2,500 for the benefit of persons sustaining personal injury, and a further undertaking in the sum of $1,000 for the benefit of any person sustaining property damage through the operation of the car. In holding this ordinance invalid the court stated that the business of renting out driverless automobiles was of a public nature, subject to regulation, and that the regulation of the use of the city streets was within the city's charter powers. It cited a section of the Texas Constitution which provided that no charter or ordinance of a city "shall contain any provision inconsistent with the Constitution of the State or of the general laws enacted by the legislature of this State". It next cited a statute which, according to the decision, "puts in force in this State the common law of England, in so far as such common law is not inconsistent with the Constitution and laws of this State." Having made these observations, the court held:

"That part of the ordinance, section 194, providing that persons engaged in business such as those of appellants, shall, before they can conduct their business in the City of Houston, enter into a bond or policy of insurance payable to the city for the use and benefit of any person or persons entitled thereto, to be conditioned that the principal shall pay all legal damages for injuries sustained by any person, caused by, or on account of, the negligence or willful acts of the driver of the vehicle, regardless of whether such driver be the servant or agent of the owner thereof or not, undoubtedly does impose upon the principal of the required bond a liability from which he is exempted by the

common law of England, and in that respect inconsistent with both the Constitution and a general law enacted by the Legislature.''

It made no mention of *City of San Antonio v. Besterio,* supra, which omission warrants a belief that it did not intend to overrule that decision.

Our Constitution (Art. XVIII, § 7) provides:

''All laws in force in the Territory of Oregon when this Constitution takes effect, and consistent therewith, shall continue in force until altered or repealed.''

■ We observe that such laws remain in force only until ''altered or repealed''. They may be altered or repealed: *Stewart v. Houk,* 127 Or. 589 (271 P. 998, 272 P. 893, 61 A. L. R. 1236) ; *Perozzi v. Ganiere,* 149 Or. 330 (40 P. (2d) 1009). It will be recalled that Portland's charter grants it power to exercise the police power ''to the same extent as the State of Oregon has or could exercise said power within said limits.'' Valid ordinances have the same effect in the city as the general laws of the state: *Portland v. State Bank of Portland,* 107 Or. 267 (214 P. 813). The enactment of an ordinance or of a statute—unless they be merely codifications of existing regulations—necessarily alters the existing law. The Texas court, in the decision just mentioned, admitted that the City of Houston could lawfully regulate traffic upon its streets. Ordinarily, the violation of such a regulation constitutes negligence per se when applicable in civil actions. This is true also in Texas. See *Franklin v. Houston Electric Co.* (Tex. Civ. App.), 289 S. W. 578. In other words, the enactment of the ordinance affects the common law by prescribing a different standard of conduct. We find nothing in *Genusa v. City of Houston* which convinces us that the ordinance under review is invalid.

The ordinance under attack imposes four burdens upon those engaged in the business of renting driverless automobiles from which they were previously free: (1) the duty of obtaining a license; (2) the payment of the occupational tax; (3) the duty of submitting cars for inspection; and (4) the deposit of $1,000 cash, or, in lieu thereof, the filing of a bond or insurance policy in that sum, conditioned as specified in the ordinance. In the absence of special circumstances the owner of the car is not liable for the negligence of his bailee: *Nash v. Baun,* 124 Or. 485 (264 P. 846). This ordinance does not of itself subject the plaintiff to such liability, but his application to the city for a license and his compliance with subdivision 4 just mentioned, followed by the issuance to him of a license, subjects him to the liability. It is a contractual liability incurred voluntarily. It may be avoided by avoiding the driverless car business; but, as a condition of entering the business, the bond must be filed. The liability attends upon the bailment even though the negligent injury is inflicted in some distant state. It is enforced in the remote place, not because Portland's authority extends there, but because the other state will enforce the contractual liability in its own courts. However, the complaint does not indicate that the plaintiff's cars operated principally outside of the city. Apparently all of them operated, at least partly, in the city. They were kept there and it was in Portland where the plaintiff selected those to whom he rented his cars. We are satisfied that the purpose of the ordinance in subjecting this business to these burdens is to promote the public safety.

We need not once more attempt to define the power possessed by every government to promote, among other matters, the safety and morals of the peo-

ple that comprise it, and which is known as the police power. Through its exercise the state enacts traffic laws and regulations concerning the equipment of automobiles. The State of Oregon has conferred that power upon the City of Portland by the charter provisions above quoted so far as necessary to enable Portland to promote the safety, morals, etc. of the people of that city. Moreover, § 55-106, Oregon Code 1930, as we have seen, recognizes power in all cities to enact "regulatory ordinances" affecting vehicular traffic, provided they are not repugnant to the state's laws. The exercise of all this power possessed by Portland may include the regulation of business and the exaction of licenses.

■ The contention that the problem of automobile regulation is one of state-wide importance rather than of a local nature does not defeat the validity of this ordinance because automobiles kept for the purpose of renting to lessees may be separately classified: *Hodge Drive-It-Yourself Co. v. Cincinnati,* supra. This business, as is well known, achieves magnitude and exhibits its greatest evils in the larger centers. The decisions point out not only the fact that cars are sometimes leased to the careless, but also the fact that they are sometimes used for unlawful and immoral purposes.

Without further analysis, we express our belief that the city's police power authorized it to enact this ordinance, and that the latter is valid.

■ Although his brief is silent upon the subject, plaintiff's counsel, during his oral argument before this court, expressed a belief that the ordinance subjects the car owner to unlimited liability; that is, to liability beyond $1,000. We have read the ordinance carefully, but cannot concur in this view. The owner's liability is purely contractual. It is undertaken when he makes

the cash deposit of $1,000, or furnishes, in lieu thereof, either of the two undertakings demanded by the ordinance. The amount of the bond or policy of insurance, like the size of the cash deposit, is $1,000, and that is the limit of liability incurred by signing it. Possibly, one sentence of the ordinance is susceptible to a different interpretation, but all other parts of the ordinance make it clear that the limit of the liability is $1,000. The very fact that the ordinance's primary purpose is to weed out of the business irresponsible persons who cannot meet its requirements, and not to render collectible personal injury judgments, is a strong circumstance indicating that the liability is contractual, and that its limit is $1,000.

In expressing ourselves as above we have, of course, indicated no views concerning the owner's liability if injury is inflicted due to the car's defective condition; nor have we offered any views upon the owner's liability arising through any circumstance except the demands of this ordinance. We have not mentioned or reviewed all of the authorities cited in the appellant's exhaustive brief. We have, however, studied all of them carefully.

The judgment and decree of the circuit court is affirmed. Costs and disbursements will not be allowed.

BEAN, C. J., and BAILEY, CAMPBELL, KELLY and RAND, JJ., concur.