## SALT LAKE CITY v. KUSSE.

No. 6020.  Decided December 31, 1938.  (85 P. 2d 802.)

Affirmed on Rehearing September 8, 1939.

*Armstrong & Burton,* of Salt Lake City, and *W. Douglas Allen* of Murray, for appellant.

*Fisher Harris,* City Attorney, and *E. R. Christensen* and *Gerald Irvine,* Ass't City Attorneys, all of Salt Lake City, for respondent.

For opinion on rehearing see 97 Utah 113, 93 P. 2d 671.

WOLFE, Justice.

Appellant was tried and convicted in the City ·Court of Salt Lake City for a violation of section 1379, Revised Ordinances of Salt Lake City, 1934, which prohibits driving an automobile while under the influence of intoxicating liquor. On appeal to the Third Judicial District Court a trial de novo was held and defendant found guilty and again sentenced. Appellant seeks here a reversal of that judgment of conviction, on the ground that the ordinance in question is invalid as not within the permitted limitations of Revised Statutes of Utah 1933, Title 57, as amended by Laws of Utah 1935, Chap. 48. This question was raised by demurrer and motion to quash in the District Court where the demurrer was overruled and the motion denied. The action of the court is assigned as error.

Section 1379, Rev. Ord. Salt Lake City 1934, is as follows:

"It shall be unlawful for any person who is an habitual user of narcotic drugs, or any person who is under the influence of intoxicating liquor or narcotic drugs, to drive any vehicle upon any street within this city. Every person convicted of a violation of this section shall be punished by imprisonment in the city jail for not less than thirty days nor more than six months, or by a fine of not less than $100.00 or more than $299.00, or by both such fine and imprisonment. On a second or subsequent conviction he shall be punished by imprisonment for not less than ninety days nor more than six months, and in the discretion of the court a fine of not more than $299.00."

This ordinance is identical with R. S. U. 1933, Sec. 57-7-14, except that the statute applies to "any highway within this state"; provides for imprisonment "in the county or municipal jail"; and the punishment provided for a second offense is imprisonment "for not less than ninety days nor more than one year, and, in the discretion of the court, by a fine of not more than $1000."

Appellant's position is that the statute applies throughout the state and makes invalid any ordinance covering the subject matter as being necessarily in conflict with the

statute and this ordinance in particular as in conflict since it provides a different punishment for a second offense.

The analysis may be divided into two parts: (1) does the city have power under its general powers to pass an ordinance prohibiting driving while under the influence of intoxicating liquor; and (2) if so, does Sec. 57-7-14, R. S. U. 1933, prevent the city from prohibiting such driving by the ordinance here involved?

1. The powers of municipalities as related to this subject matter are contained in the statutes as follows: (Sec. 15-8-30, R. S. U. 1933.)

"They may regulate the *movement of traffic* on the streets, sidewalks and public places, including the movement of pedestrians as well as of vehicles, and the cars and engines of railroads, street railroads and tramways, and may prevent racing and immoderate driving or riding." (Italics added.)

Section 15-8-84 provides:

"They may pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this chapter, and such as are necessary and proper to provide for the safety and preserve the health, and promote the prosperity, improve the morals, peace and good order, comfort and convenience of the city and the inhabitants thereof, and for the protection of property therein; and may enforce obedience to such ordinances with such fines or penalties as they may deem proper; provided, that the punishment of any offense shall be by fine in any sum less than $300 or by imprisonment not to exceed six months, or by both such fine and imprisonment."

There may be some question whether Sec. 15-8-30 does not pertain only to the regulation of the actual movement of traffic and the actual prevention of racing and immoderate driving; that is, whether the section permits only the operation on these acts as they occur without giving power to prevent an act or a condition which itself, if permitted, might affect the movement of traffic or be likely to result in racing or immoderate driving. While this seems a narrow construction, it need not now be decided because we think

Section 15-8-84, R. S. U. 1933, definitely permits the city to pass an ordinance to prevent driving while under the influence of intoxicating liquors. In the cases of *People* v. *Ekstromer,* 71 Cal. App. 239, 235 P. 69, 71 and *People* v. *Dingle,* 56 Cal. App. 445, 205 P. 705 (cited with approval in the opinion of Mr. Justice Folland in *State* v. *Johnson,* 76 Utah 84, 287 P. 909) it was held that the intoxicating liquor taken by defendant must have affected adversely his ability to drive. Under such definition of the "influence of intoxicating liquor" the prohibition of such person's propelling or driving a car is definitely and closely related to the safety of the inhabitants and the preservation of property. It comes under the principle laid down in *Wadsworth* v. *Santaquin City,* 83 Utah 321, 28 P. 2d 161, which held as follows [page 171] :

"* * * That a city organized and operating under general law may possess and exercise only the powers granted in express words and such as are necessarily or fairly implied in, or incident to, the powers expressly granted, or those essential to the declared objects and purposes of the corporation not merely convenient but indispensable."

Section 1379, Rev. Ordinances of Salt Lake City 1934, was within the powers conferred on cities by Sec. 15-8-84, R. S. U. 1933. The case of *Salt Lake City* v. *Sutter,* 61 Utah 533, 216 P. 234 is distinguished on the very ground on which that case was put. There was nothing in the statutes which gave the city power to prohibit possession of intoxicating liquors. There was power to pass an ordinance to prevent the sale, disposition, and manufacture of intoxicating liquors; but as there said the power to prohibit possession could not be inferred from the power to prohibit sale because it was not necessary to accomplish such prohibition nor was it fairly implied as an incident of such power.

Does Sec. 57-7-14, R. S. U. 1933, being of state wide application and designed to prevent driving anywhere in the state while under the influence of intoxicating liquor, pre-

vent the enactment of an ordinance preventing in the cities the same thing?

The solution of this question depends on the following principles: An ordinance dealing with the same subject as a statute is invalid only if prohibited by the statute or inconsistent therewith. *Covey Drive Yourself* v. *City of Portland*, 157 Or. 117, 70 P. 2d 566, 569; *Clayton* v. *State*, 38 Ariz. 466, 300 P. 1010; *State* v. *Cook*, 84 Mont. 478, 276 P. 958, 961; *Eanes* v. *City of Detroit*, 279 Mich. 531, 272 N. W. 896; *Kizer* v. *City of Mattoon*, 332 Ill. 545, 549, 164 N. E. 20; *Hack* v. *Mineral Point*, 203 Wis. 215, 221, 233 N. W. 82; *Ex parte Snowden*, 12 Cal. App, 521, 525, 107 P. 724; *Sims* v. *Martin*, 33 Ga. App. 486, 126 S. E. 872. But see *Marshall* v. *City of Griffin*, 173 Ga. 782, 161 S. E. 622.

There is nothing in Title 57 which expressly prohibits the passage of ordinances directed against driving while under the influence of intoxicating liquors. In fact, there are provisions in that act which would appear to grant permission to pass ordinances not inconsistent with the act. Sec. 57-7-74, as amended by Chapter 48, Laws of Utah 1935, recites:

"It is a misdemeanor for any person to violate any of the provisions of this title or of a municipal or county ordinance complying with or within the terms of this title, unless such violation is by this title or other law declared to be a felony."

Section 57-7-6, as amended by Laws of Utah 1935, Chapter 48, reads in part as follows:

"Local authorities, except as expressly authorized, shall have no power or authority to alter any of the regulations declared in this chapter, or to enact or enforce any rule or regulations contrary to the provisions of this chapter, except [as next indicated] * * *."

The exception deals with matters such as parking of vehicles, regulating traffic by semaphores or traffic officers, providing for one way traffic, and regulation of processions or assemblages or speed in parks. It will be noted that

the inhibition is against "altering any of the regulations" or against "enacting or enforcing any rule or regulation *contrary* to the provisions" of the chapter. (Italics added.) Then follow special exceptions where there may be contrary regulations. Certainly Sec. 57-7-6 did not prohibit any ordinance consistent with and not contrary to the provisions of Chapter 57. It expressly permitted inconsistent and contrary regulations in certain matters to be made by the city.

In *Quillan* v. *Colquhoun,* 42 Idaho 522, 247 P. 740 it was held [page 743]:

"By prohibiting the passage of other ordinances inconsistent with the provisions of the act, the statute thereby expressly grants the right to make ordinances not inconsistent with the statute."

We see nothing inconsistent between that part of the ordinance which prohibits driving while under the influence of liquor and the provisions of Title 57.

" 'In determining whether an ordinance is in "conflict" with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.' Village of Struthers v. Sokol, 108 Ohio St. 263, 140 N. E. 519. Judged by such a test, an ordinance is in conflict if it forbids that which the statute permits." *State* v. *Carran,* 133 Ohio St. 50, 11 N. E. 2d 245, 246.

"The statute, as well as the ordinance, in the case at bar, is prohibitory, and the difference between them is only that the ordinance goes farther in its prohibition—but not counter to the prohibition under the statute. The city does not attempt to authorize by this ordinance what the Legislature has forbidden; nor does it forbid what the Legislature has expressly licensed, authorized, or required. * * * Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail. *Bodkin* v. *State* [132 Neb. 535] 272 N. W. 547; *City of Mobile* v. *Collins,* 24 Ala. App. 41, 130 So. 369". *Fox* v. *City of Racine,* 225 Wis. 542, 275 N. W. 513, 515.

"There is no question in the instant case that the rule of conduct established by the ordinance does not contravene the state law, in that it does not make it less stringent or relax it." *Brennan* v. *Recorder of Detroit,* 207 Mich. 35, 38, 173 N. W. 511, 512.

See Berry on Automobiles, 6th Ed., Secs. 97 and 98; *United States Fidelity and Guaranty Co.* v. *Guenther*, 281 U. S. 34, 36, 50. S. Ct. 165, 166, 74 L. Ed. 683, 72 A. L. R. 1064; *Somerville* v. *Keeler*, 165 Miss. 244, 254, 145 So. 721.

We have carefully considered the authorities on which appellant so strongly relies. Some have already been averted to. *Clayton* v. *State*, 38 Ariz. 135, 297 P. 1037, held that the city of Phoenix was not authorized to enact an ordinance prohibiting drunken driving. On rehearing, 38 Ariz. 466, 300 P. 1010, the court said that:

> "If the Legislature had not in the Highway Code taken over and appropriated to itself, *to the exclusion of others,* the power and right to prescribe the qualifications of motor vehicle drivers, and to punish them for driving while under the influence of intoxicating liquor, we would be inclined to hold that a city could, under the general welfare clause, legally legislate on the subject." (Italics added.)

The court went on to observe that such an ordinance "might be legally incorporated into the city's ordinances, notwithstanding it is a state law, if the charter or the general laws affecting the powers of cities authorized it. It is not a novelty in the law to find the same act punishable by statute and by city ordinance." It should be noted that the Arizona court was not construing the sections of the Uniform Act Regulating Traffic on Highways which are before us. That court was considering an act which, as it said, "appropriated the field" and "to the exclusion of others" by setting out specifically, throughout the act, the precise powers of local authorities with reference to each subject dealt with. There was in that act no section recognizing the rules, regulations (or ordinances) of local authorities if not "contrary to the provisions" of the act as in our statute. And that court recognized, as do we, that a general grant of power to cities will support an ordinance prohibiting driving automobiles while under the influence of liquor.

*State* v. *Mandehr*, 168 Minn. 139, 209 N. W. 750, is the inverse of the case at bar. There a statute (Laws 1925,

c. 416, § 26) prohibited ordinances in respect to or "limiting the use or speed of motor vehicles" and the court merely held that prohibiting driving a motor vehicle while in an intoxicated condition "limited the use of motor vehicles." [page 751].

In *Fargo* v. *Glaser*, 62 N. Dak. 673, 244 N. W. 905, the court found no authority in the city to enact an ordinance relating to driving while intoxicated unless it was implied from the provisions of the Motor Vehicle Act such as we have considered, supra. Here the power under which Salt Lake City acted was derived not from the Motor Vehicle Act but from general laws governing cities and towns. The decision was 3 to 2 and the dissenting opinion approached the question as we do. It found that the city was authorized to prohibit drunken driving (although the statutes there more doubtfully granted such power than do ours) and then found that the Motor Vehicle Act invalidated only inconsistent ordinances and that there was no conflict between the ordinance and the statute covering the same subject. It is our view that the city's power is derived, not from the Motor Vehicle Act, but from the general statutes and that the Motor Vehicle Act makes void all ordinances, otherwise lawful, which conflict with and constitute a barrier to the enforcement of the uniform state law.

*Helmer* v. *Superior Court*, 48 Cal. App. 140, 191 P. 1001, relates to driving while under the influence of intoxicating liquors and is a much cited case. It was decided in 1920 and did not arise under statutes such as are before us. And the problem that the court dealt with was a constitutional provision which made ordinances paramount to state law if they related to "municipal affairs." The court was therefore impelled to lean against interpreting anything as a "municipal affair" where uniformity was required. The court was confronted with an ordinance, upholding which would make a checkerboard of regulations in California when the Motor Vehicle Act plainly contemplated uniformity.

The court held that driving while intoxicated was a state problem, saying [page 1003]:

"It is true that the ordinances of a city are supreme in 'municipal affairs.' But the act charged against petitioner is not a 'municipal affair.' This is so even if the claim is sound that ordinances designed to control the use of streets prevail over general laws. The act of driving a motor vehicle while under the influence of intoxicating liquors is of no immediate or special concern to the city as such. It is of general concern to the inhabitants of a city in common with all other residents of the state. * * *

"While it is more dangerous in a crowded street, it is so only because there are more persons to be injured, but as to each person it is but slightly more dangerous than to one of the smaller number in a less crowded locality. Speeding is dangerous because of the locality. The drunken driver is a danger in any locality, if there are persons present to be injured.

"The fact that he is a menace to life and to private property justifies the state in prescribing penalties for the act, just as it may do for violations of general sanitary, health and comfort laws."

It is admitted here that the Motor Vehicle Act applies uniformly throughout the State of Utah. We are at liberty to construe a city's prohibiting driving on its streets while under the influence of intoxicating liquor as a municipal affair without being confronted with a constitutional provision which would make a municipal ordinance in this regard superior to a state statute.

We need not consider the portion of Ordinance 1379 which deals with a second offense for it does not appear that such provision affects this case. If such provision is inconsistent with the provisions of Title 57, it is easily severable. Appellant's demurrer was properly overruled and his motion to dismiss properly denied.

This opinion is not concurred in by three members of the Court, but a majority of the Court not voting for a reversal, the judgment of the district court is affirmed.

FOLLAND, C. J., concurs.

LARSON, Justice.

I dissent. The only question presented is: Has a city the power by ordinance to prohibit people under the influence of intoxicating liquor from driving automobiles, and to prosecute and penalize such as do so? Cities have only such power as is expressly granted to them by the legislature or as is implied from the granted powers, or such as is essential to the accomplishment of the declared objects and purposes of the corporation. *Am. Fork City* v. *Robinson,* 77 Utah 168, 292 P. 249; *Salt Lake City* v. *Sutter,* 61 Utah 533, 216 P. 234; *Nelden* v. *Clark,* 20 Utah 382, 59 P. 524, 77 Am. St. Rep. 917.

If the city has the power it claims in this case it must be derived from one of three sources: (1) The grant found in Sections 15-8-11 and 15-8-30, R. S. U. 1933, granting cities the right to regulate the use of streets and the movement of traffic thereon. (2) The general grant of power to pass ordinances "to provide for the safety and preserve the health, and promote the prosperity, improve the morals, peace and good order" of the city, as granted in Section 15-8-84, R. S. U. 1933. (3) The Motor Vehicle Act itself, being Title 57, embracing Sections 57-1-1 to 57-12-16, R. S. U. 1933, as amended by Chapters 46, 47, and 48, Laws of Utah 1935.

I shall briefly explore each of these sources.

15-8-11: "They may regulate the use of streets, alleys, avenues, sidewalks, crosswalks, parks and public grounds, prevent and remove obstructions and encroachments thereon, and provide for the lighting, sprinkling and cleaning of the same."

15-8-30: "They may regulate the movement of traffic on the streets, sidewalks and public places, including the movement of pedestrians as well as of vehicles, and the cars and engines of railroads, street railroads and tramways, and may prevent racing and immoderate driving or riding."

The first of these sections referring to the *use* of streets has to do with the purposes for which streets can be used,

to the end that things may not be done upon the street which unreasonably interfere with the movement of traffic; to the end that any unusual or extraordinary use of the highways be permitted only under regulation, so as to prevent or minimize the interference with the usual and ordinary use thereof. It is not concerned with the question as to who may use the street but as to the purposes for which it may be used by anyone.

The second section quoted by its express terms relates to the "movement of traffic" and preventing "racing and immoderate driving or riding." Here too there is no grant of power to say *who* may use the street, but only to *regulate the movement* of traffic thereon. The section itself is a limitation on the power of the city and prevents too wide an application of the word *traffic*. It does not say to *regulate traffic* upon the street but does say the *movement of traffic*. I do not say that the word *traffic* could never mean anything more than movement. That question is not before us. But certainly the *movement of traffic* cannot be extended to include a designation of who may enter into traffic, that is, as to who may use the street for its ordinary and usual purposes.

(2) The opinion of Mr. Justice Wolfe is founded upon the theory that authority for the ordinance is found in Section 15-8-84. So far as material here it reads:

"They may pass all ordinances and rules, and make all regulations, *not repugnant* to law, * * * such as are necessary and proper to provide for the safety and preserve the health, and promote the prosperity, improve the morals, peace and good order, comfort and convenience of the city and the inhabitants thereof, and for the protection of property therein; * * *." (Italics added.)

This is a general or omnibus grant of police power to the municipality, and applies therefore only to matters which are commonly spoken of as "matters of local concern" or as "municipal affairs." That is, the details of the specific grants of power. The legislature may grant unto cities

certain more extensive powers but such grants of power must be specific and express. The general grant of power is confined to the use of police power for the well-being of the citizens in matters of local or community concern only. The city does not assume all the powers of the state within its limits but only such as are incident to a city government. Under such general grants of power the city must confine itself to matters of its local affairs. And when a city seeks to legislate on a matter not of local concern but of state-wide concern, it must look for its power to some grant other than the general power to provide for health and safety. The police power inheres in the state, and the municipality has only what the state delegates to it directly or by necessary implication. But the state may always invade the field of regulation delegated to the cities and supercede, annul, or enlarge the regulation which the municipality has attempted. It may modify or recall the police power of the city as it may abolish the city itself. Is then the question of people under the influence of liquor driving automobiles one of "local concern," a "municipal affair," or is it one of "statewide concern," a "state affair"? At this point I shall simply say that it is a matter of statewide concern, and not a "municipal affair" coming within the general grant of safety. The development of this point will appeal later in this opinion. I find therefore no authority for this ordinance under the section under discussion.

(3) Does the Motor Vehicle Act (Title 57, R. S. U. 1933) grant or deny such power to the city? Title 57 is the so called Uniform Motor Vehicle Act, adopted and in effect in many of the states. It is a comprehensive act dealing with many if not all phases of law relative to motor vehicles. It was first enacted in 1931 as Chapter 49, Laws of Utah 1931, under the title:

"Uniform Act Regulating Traffic on Highways.

"An Act regulating traffic on highways and providing for traffic signs and signals and defining the power of local authorities to enact or enforce rules and regulations *regarding the matters embraced*

*within the provisions of this Act* and to provide for the enforcement of this Act and the disposition of fines and forfeitures collected hereunder and to create a fund to be known as the highway improvement fund; providing penalties for the violations of this Act; and repealing * * * all laws in conflict with this Act." (Italics added.)

It has been carried forward with only minor changes as Chapter 7 of Title 57, R. S. U. 1933. The act as written in 1931 as well as its incorporation in the Motor Vehicle Code in the Revision of 1933 is a comprehensive piece of legislation, revealing an intention of the legislature to cover fully and completely the subject of use of the highways of the state and motor vehicles and their use on the highways. Such legislation supplants all previous legislation on the subject unless specially saved by the provisions of the act itself. *Olson* v. *State*, 36 Ariz. 294, 285 P. 282. That the regulations of the state act apply and control within cities is not only manifest from the title of the act as originally passed but from its various provisions wherein the speed of motor vehicles in residential and business districts, by schools, railroad crossings and parks, is fixed (Sec. 57-7-16) ; exemptions for emergency vehicles (57-7-21). Provisions for licensing drivers and providing who may or may not drive motor cars, and for revoking licenses, regulations as to passing and rights-of-way, turning and stop signals, safety zones, and street cars, etc., all are dealt with, defined and regulated. In these and in numerous other ways the Act evidences a purpose to cover the whole subject of motor vehicular travel and to regulate the use of the highways, both in cities and the country, by the public, and to supercede all prior legislation on the subjects, both state and municipal. Back in 1921 the legislature declared that the state law governing the use of highways by motor vehicles and traffic regulations on the highways should be general throughout the state and should be uniform and that no city, town, or county could impose any conflicting regulation or impose any fine or penalty other than those prescribed by the state. Sec. 3984, Chapter 83, Laws of Utah 1921. This re-

mained on the statute books until the enactment of the general Uniform Motor Vehicle Act in 1931, which as indicated above, in its title declared its purpose inter alia to define the power of local authorities to enact or enforce rules or regulations regarding the matters embraced within the provisions of the act. It must follow therefore that for ten years the policy of the state had withdrawn from the cities, had repealed from the grants of power to cities any right they might have had to enact any ordinance providing any other penalty or fine than that provided by the state law for violations of the motor vehicle or traffic act, or violations of regulations for use of the road. Such power, having been withdrawn, is not restored by repeal of the withdrawing or repealing act. I see no escape from the conclusion therefore that Section 7 of Chapter 49, Laws of Utah 1931 (which is the same as Section 57-7-6, R. S. U. 1933), defining the power of local authorities, carried forward the policy and principle declared in 1921, especially since Section 6 of said Chapter 49 (in substance repeated in Section 57-7-5, R. S. U. 1933), declares the Act shall be applicable and uniform throughout the state and in all political subdivisions and municipalities and no local authority shall enact anything in conflict with its provisions unless *expressly* authorized in the Act. The section with respect to power of local authorities is section 57-7-6, Laws of Utah 1935, chapter 48, which reads:

"Local authorities, except as expressly authorized, shall have no power or authority to alter any of the regulations declared in this chapter, or to enact or enforce any rule or regulations contrary to the provisions of this chapter, except that the local authorities shall have power to provide by ordinance for the regulation of *the standing or parking of vehicles and electric trolley coaches,* for the regulation of traffic by means of traffic officers or semaphores or other signaling devices on any portion of the highway where traffic is heavy or continuous, and may prohibit other than one-way traffic upon certain highways, and may regulate the use of the highways by processions or assemblages. Local authorities may also regulate the speed of vehicles in public parks and shall erect at all entrances to such parks

adequate signs giving notice of any such special speed regulations."
(Italics added.)

The italicized part was added in 1935, the rest of the section being as it stood in the 1931 and 1933 enactments. This section and section 57-7-17 expressly provide that the local authorities shall have power to provide by ordinance for certain specified regulations. In view of the fact that for 10 years the local authorities could make no ordinance providing any fine or penalty *other than that provided* by statute, it seems that this was now an express grant of some limited regulatory power to the city. If the old power under Sections 15-8-30 or 15-8-84, R. S. U. 1933, was still operative why did the legislature now grant it over again? But if section 57-7-6 be considered as a limitation on the cities' power, or rather as a measure of a grant of power not existing since 1921, it is all in harmony with the declared policy of the legislature. The Uniform Act when enacted in 1931 contained a declaration that it should be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.

Let us briefly note how other states which have the Uniform Motor Vehicle Act have construed it. The Arizona Court in *Clayton* v. *State,* 38 Ariz. 135, 297 P. 1037, had an identical situation before it. That case involved an ordinance of the City of Phoenix, for all practical purposes the same as the ordinance involved here. The court says [page 1039]:

"Under section 1574 the matter of 'local parking and other special regulations' is left in the control of the governing body of the city; that is, matters of peculiar local concern are left with the local authorities. The reservation to cities and towns of power over 'local parking and other special regulations' would seem to emphasize a purpose on the part of the legislature to make the provisions of the Highway Code in all other respects the guiding and controlling rule throughout the state. Any deviations from the regulations prescribed in the Highway Code to suit local conditions or convenience are provided for therein.

"The regulation or provision as to the insobriety of a driver is exactly the same in the Highway Code and section 55 of the city ordi-

nance, except as to punishment. The punishment under the ordinance is not as great as may as inflicted under the state law, and the confinement is in the municipal and not the county jail. Under the state law the offense is a high misdemeanor. The act condemned in both is the same."

The Arizona Court then points out that cities are confined to matters of local concern in legislation, and that a city by-law or ordinance on a matter of statewide concern is not a rightful subject of legislation as given in general grants of power. The state must therefore be the one to determine whether the use of streets by one under the influence of liquor is a matter of state or local concern.

The Arizona court held that the Uniform Motor Vehicle Act clearly indicated an intention on the part of the legislature to make such problem one of statewide concern and control, and in a very well reasoned opinion held that the state had pre-empted the field for control of drunken driving saying:

"We conclude that the Legislature in the Highway Code has determined that the sobriety or insobriety of a motor vehicle driver on the public highways of the state is a matter of state-wide policy and concern, and that it was desirable that the rule with reference to such drivers should be uniform throughout the state.

"It follows, then, that section 55 of Ordinance No. 1492 of the city of Phoenix is invalid, and that the court was without jurisdiction of the defendant or the subject-matter."

The California courts in *Helmer* v. *Superior Court,* 48 Cal. App. 140, 191 P. 1001, have held to like effect. To like effect is *State* v. *Mandehr,* 168 Minn. 139, 209 N. W. 750; *State* v. *Thompson,* 149 Wis. 488, 137 N. W. 20, 43 L. R. A., N. S., 339, Ann. Cas. 1913C, 774.

In the Clayton Case, supra, upon petition for rehearing, 38 Ariz. 466, 300 P. 1010, the court says [page 1011]:

"* * * we think the Legislature looked upon the act of incapacitating one's self by drinking intoxicants as not unimportant and trivial or a police court matter. The Legislature evidently took the view that irresponsible and reckless driving that usually accompanies

liquor drinking should be tried in a court of record and upon conviction severely punished, and for that reason chose to make its rule the rule throughout the state.

"The motion for rehearing is denied."

For the reasons above stated, I think the judgment should be reversed.

MOFFAT, Justice.

I concur in the views expressed by Mr. Justice LARSON in his dissenting opinion.